The President, Directors and Company of the Greenfield Bank *vs.* Elbridge G. Crafts & another.

By ratifying and adopting a forged signature upon commercial paper, the person whose signature has been forged becomes liable thereon, although no words of agency appear upon the paper, and no facts are shown sufficient to constitute an estoppel *in pais.*

If competent circumstantial evidence tending to prove an adoption and ratification of a forged signature by one who knew all the material facts has been submitted to a jury under proper instructions, their verdict finding that the adoption and ratification were proved will not be set aside on the ground that the evidence was insufficient to warrant it, for the reason that the paper bearing the forged signature was not presented to the party whose name it bore, and no express declaration was made by him that he would adopt and ratify it, and the circumstances proved might leave the question doubtful in the opinion of the court.

If a letter has been sent by the post, there is ordinarily no presumption that it reached its destination and was received by the person to whom it was addressed, though living at the place and usually receiving his letters there; but it should be left to the jury to determine, upon all the evidence, whether it was in fact received.

CONTRACT upon a note of $130, bearing the name of Thomas Crafts as joint maker with Martin Crafts, and three drafts, one of $130, and the other two of $100 each, drawn by Martin Crafts and bearing the name of Thomas Crafts as indorser, falling due November 26, December 8, 16 and 22, 1860, respectively. The action was originally commenced against Thomas Crafts, and after his death his executors appeared and took upon themselves the defence, which was that the signatures of his name were forged.

After the former decision in this case, reported in 2 Allen, 269, a new trial was had in the superior court, and a verdict rendered for the plaintiffs, which was set aside as not supported by the evidence. A third trial was had in the superior court, before *Morton*, J., at which it appeared that the signatures of the name of Thomas Crafts were not made by him personally, but that all of the paper was presented to the plaintiffs for discount by his son, Martin Crafts, who lived in Malden. There was no direct evidence of any express authority in him to use his father's name; and Thomas Crafts testified, by deposition taken before his death, that his name was signed without his authority or knowledge; that so far as he had any knowledge the signatures were forgeries; that he never authorized Martin or any other person to use or sign his name to any notes, acceptances or drafts, and had not himself indorsed any paper for Martin within two or three years of the date of the paper in suit.

The plaintiffs however sought to recover upon the following grounds: 1. That the signatures of Thomas Crafts were placed upon the paper by Martin with his express or implied authority or consent. 2. That, as to the note and the two drafts first due, the signatures of the name of Thomas had been ratified and adopted by him. 3. That, as to the note and two drafts, Thomas Crafts had misled the plaintiffs into the belief that the signatures were genuine, so that he or his representatives could not now deny the same.

There was no dispute that the drafts were duly protested and notice thereof given to Thomas Crafts.

Upon the second and third grounds of the plaintiffs' claim,

the evidence relied upon by them tended to show that, after sending to Thomas Crafts a duplicate notice of the protest of the draft first due, the plaintiffs' cashier, Edmund W. Russell, addressed to him a letter, on the 13th of December, informing him of the overdue paper then held by the bank (to wit, the note and the draft first due) and requesting his immediate atten- tion to the same, to which he received no reply; that notice of the protest of the second draft was shortly after received by the plaintiffs, whereupon, on the 17th of December, Russell went to see Thomas Crafts, who admitted the receipt of Russell's let- ter to him, and the notice of the protest of the first draft, and Russell told him of the receipt of the notice of the protest of the second draft, which also had been forwarded by mail; that Thomas Crafts said he knew the notes were overdue and ought to have been attended to, that he expected Martin up to see to them, that he or his son, James M. Crafts, had written to Mar- tin and they expected him very soon, that either Martin or James should come to Greenfield in a day or two and it should be arranged or settled, and that he had property enough to pay all the notes, but had not the ready money; that Russell told him if he wanted time there would be no difficulty about that; and that Thomas Crafts did not say or intimate that the note and drafts were not genuine. Russell did not have any of the paper with him at the time, and did not inform Thomas Crafts of two other similar drafts not then due which were held by the bank. The evidence also tended to show that the plaintiffs had no knowledge that the signatures were not genuine, and that their genuineness was not questioned till the 19th of December, when James M. Crafts went to Greenfield to ascertain the amount of paper bearing the name of Thomas Crafts held by the plaintiffs and another bank, and, on the next day, after ascer- taining that there was similar paper at other banks, he wrote to the plaintiffs that Thomas Crafts would not pay any of the paper so signed; whereupon the plaintiffs' president at once started for Malden, with a writ of attachment, and reached there on the morning of December 21st, and made an attach- ment of certain property of Martin's, but was unable to find

him, he having left on the day before. It did not appear that Martin had made any conveyance or concealment of his property between the 17th and the 21st of December. Martin Crafts was afterwards arrested for forgery of his father's name upon similar paper on a complaint by another party, and at the time of the trial was held in jail. Thomas Crafts was about eighty years of age and quite infirm at the time of these transactions.

Among other evidence tending to prove authority in Martin Crafts to sign his father's name, the plaintiffs introduced evidence tending to show that on three occasions within three years before they took any of the paper in suit, other similar paper to that in suit, on which Martin had signed his father's name, and which was held by other parties, was protested, and notices of the protests sent to Thomas Crafts by mail, prepaid, addressed to him at Whately, where he lived and usually received his letters, and that no reply or disavowal in any form of the right of his son so to use his name was received from or made by him. There was evidence tending to show that in fact the notices were not received.

The defendants requested the court to instruct the jury that if they were satisfied that the signatures of the name of Thomas Crafts, when made, were forgeries, the defendants could not be held liable upon the ground that they were ratified and adopted, unless upon proof of such facts as would amount to an estoppel *in pais;* that, to constitute such an estoppel in this case it was incumbent on the plaintiffs to prove that the delay of two or three days after December 17th prejudiced their means or chances of obtaining payment from Martin; and that all the facts proved and relied upon by the plaintiffs were insufficient to amount to such an estoppel, or to show such an adoption of the signatures by Thomas Crafts as would warrant a verdict for the plaintiffs. The judge declined to instruct the jury in accordance with the first and third of the above requests, but instructed them that the evidence was competent for their consideration upon the question whether Thomas Crafts had ratified or adopted the signatures as his own, and such ratification or adoption, if proved, would be equivalent to a previous authority·

and upon the question what would constitute such ratification or adoption, the judge gave such instructions as would be applicable to an ordinary case of apparent or assumed agency, and no objection was made that the instructions were not proper as applied to such a case. Upon the third ground of the plaintiffs' claim, the judge instructed the jury substantially as prayed for in the second clause of the defendants' prayer.

The plaintiffs requested the court to instruct the jury that the presumption is that a letter, deposited prepaid in a post-office, addressed to a person living and receiving his letters usually at the post-office at which it is addressed, reaches him. The judge declined so to rule, and instructed them that there was no conclusive presumption of law that the notices were received, but it was a question of fact for the jury, upon all the evidence in the case, and that it was for the plaintiffs to establish that the notices were received before they would be at liberty to draw any inferences from a neglect to reply to them.

The jury were also instructed that if they found for the plaintiffs upon the first ground, they should return a verdict for the full amount of the note and the three drafts ; but if upon either of the other grounds, they should return a verdict for the note and the two drafts first due. Their verdict was for the plaintiffs, for the amount of the note and the two drafts first due. Both parties alleged exceptions.

*J. Wells*, for the defendants. A person cannot be held upon a forged signature of his name, by proof merely of such acts or admissions as would establish ratification or adoption of an ordinary act of assumed or apparent agency, where the facts of the case are not such as to constitute an estoppel *in pais.* Where the act is one of apparent or assumed agency, and lacks only the authority of the principal, such acts or admissions supply the want of authority. They relate back, and qualify the original act. *Thayer* v. *White*, 12 Met. 343. But where the act is not one of agency in its character or form of execution, the evidence which otherwise might show ratification can apply only in one of two ways: 1. As *prima facie* evidence that the act was the act of the party himself. 2. As evidence to establish

an estoppel. In the present case the use of Thomas Crafts's name had no characteristic of agency. Unlimited authority would not establish it as an act of agency. Edwards on Bills, 80. *Wood* v. *Goodridge*, 6 Cush. 117. There can therefore be no ratification of it, as of an act of agency. If the proof is sufficient to constitute an estoppel *in pais*, it derives its whole binding force from the facts which preclude him from denying it to be his own proper act, and not from any obligation resting upon principles of agency. If the proof falls short of an estoppel, it cannot tend to prove an agency, but only serves to raise a presumption that the act was the act of the party himself; and this presumption in the present case was rebutted by positive proof. Wherever the doctrine of ratification has been applied, it has been to acts in the nature of agency. *Merrifield* v. *Parritt*, 11 Cush. 590. *Brigham* v. *Peters*, 1 Gray, 139–147. And where the act purports to be the act of the party himself, and is void as an act of agency, there is no question of ratification. The proof is in the nature of an admission, and like other admissions may be controlled. It is an admission, not of agency or authority, but that the act was the act of the party himself; and proof that it was not the act of the party himself, but was a forgery, meets and controls the admission. Chit. Bills, (10th Amer. ed.) 291, *note. Ex parte Edwards*, 5 Jur. 706. *Hall* v. *Huse*, 10 Mass. 39. *Cabot Bank* v. *Russell*, 4 Gray, 167. It is contrary to public policy to give validity to forged paper upon terms such as the court established for this case. *Paige* v. *Stone*, 10 Met. 160–168.

*C. Allen*, for the plaintiffs, cited, as to the question of ratification, *Hoyt* v. *Thompson*, 19 N. Y. 207, 219 ; *Smith* v. *Mayo*, 1 Allen, 160 ; *Bird* v. *Brown*, 14 Jur. 132 ; *Commercial Bank* v. *Warren*, 15 N. Y. 577 ; *Culver* v. *Ashley*, 19 Pick. 301 ; Story on Agency, §§ 242, 244, 245, 256, 257, 258 ; 2 Greenl. Ev. § 67 ; *Wilson* v. *Tumman*, 6 Man. & Gr. 242 ; *Weed* v. *Carpenter*, 4 Wend. 222 ; *Forsyth* v. *Day*, 46 Maine, 176 ; *Corser* v. *Paul*, 41 N. H. 30 ; *Fitzpatrick* v. *School Commissioners*, 7 Humph. 224 ; *Helmsley* v. *Loader*, 2 Camp. 450 ; *Salem Bank* v. *Gloucester Bank*, 17 Mass. 27, 28. As to the presumption that the letter

was received, 1 Greenl. Ev. § 40; *Warren* v. *Warren*, 1 Cr
Mees. & R. 250; *Russell* v. *Buckley*, 4 R. I. 525; *Oaks* v. *Wel
ler*, 16 Verm. 63; *Waydell* v. *Velie*, 1 Bradf. (N. Y.) 277; *Smith*
v. *Osborn*, 1 Fost. & Finl. 268; *Futcher* v. *Hinder*, Ib. 357;
*Dana* v. *Kemble*, 19 Pick. 114; *Hilton* v. *Smith*, 5 Gray, 403.

Dewey, J.   It is apparent from the finding of the jury, that
the plaintiffs failed to prove that the signature of Thomas
Crafts's name was placed upon these various instruments with
his previous authority.   The right of the plaintiffs to maintain
their verdict rests upon proof of ratification and adoption by
Thomas Crafts of the act of signing, or upon the ground of an
estoppel to deny the signature thereto, by reason of his acts in
reference to the same, when brought to his knowledge.

As to the question of estoppel, and what was necessary to
be shown to prove such estoppel, the court adopted the instruc-
tions asked for by the defendants, and no objection under that
head can now be made the subject of inquiry, unless it be that
of the refusal of the court to adopt the ruling asked for as to
the sufficiency of all the evidence to warrant a verdict for the
plaintiffs, which may be the subject of a distinct considera-
tion.

This leaves us, as the first and most important question,
that which arises upon the rulings asked for by the defendants
upon the matter of adoption and ratification by Thomas Crafts
of the use of his name on these instruments.   The case was put
to the jury under instructions that the plaintiffs might maintain
their action, if they established the fact of an adoption and rat-
ification of the signatures by Thomas Crafts, the judge at the
same time giving to the jury full and proper instructions as to
what was necessary to be shown to establish such adoption and
ratification in the ordinary cases of a signature of a note without
a previous authority.

But it is now urged on the part of the defendants, that these
signatures were incapable of such adoption or ratification.

As to this objection, it is clear that it cannot be maintained
upon the ground of the form of the signatures merely.   This
form of signature, though not the more usual manner of signing

by an agent, does not prevent the person whose name is placed on the note from being legally holden, upon proof that the signature was previously authorized, or subsequently adopted. Various similar cases will be found, where the party has been charged, where the name of the principal appears upon the note accompanied with no indications of the fact of its having been signed by another hand. It was so in *Watkins* v. *Vince*, 2 Stark. R. 368, in *Merrifield* v. *Parritt*, 11 Cush. 591, and *Brigham* v. *Peters*, 1 Gray, 147. Wherever such signature by the hand of another was duly authorized, and also where a note was thus executed under an honest belief by the party signing the name that he was thus authorized, we apprehend that there can be no doubt that it would be competent, in the case first stated, to maintain an action upon the same, upon proof of the previous authority thus to sign the name, or, in the latter, upon proving that the signature, although at the time unauthorized, was subsequently adopted and ratified by the party whose name appears as promisor. Nor is it necessary to establish a ratification, that there has been any previous agency created. An act wholly unauthorized may be made valid by a subsequent ratification. This may be so, although the actor was an entire stranger as to any business relations. *Culver* v. *Ashley*, 19 Pick. 301.

The only question upon this part of the case is, whether a signature, made by an unauthorized person under such circumstances as show that the party placing the name on the note was thereby committing the crime of forgery, can be adopted and ratified by any acts and admissions of the party whose name appears on the note, however full, and intentionally made and designed to signify an adoption of the signature. The defendants insist that it cannot, by such evidence as would in other cases warrant the jury in finding an adoption; and that nothing short of an estoppel, having the element of actual damage from delay or postponement, occasioned by the acts of the person whose name is borne upon the note, misleading the holder of it, will have this effect. As to the person himself whose name is so signed, it is difficult to perceive any sound reason for

the proposed distinction, as to the effects of ratifying an unau thorized act, in the two supposed cases.

In the first case, the actor has no authority any more than in the last. The contract receives its whole validity from the ratification. It may be ratified, where there was no pretence of agency. In the other case, the individual who presents the note thus signed passes the same as a note signed by the promisor, either by his own proper hand, or written by some one by his authority. It was clearly competent, if duly authorized, thus to sign the note. It is, as it seems to us, equally competent for the party, he knowing all the circumstances as to the signature and intending to adopt the note, to ratify the same, and thus confirm what was originally an unauthorized and illegal act. We are supposing the case of a party acting with full knowledge of the manner the note was signed, and the want of authority on the part of the actor to sign his name, but who understandingly and unequivocally adopts the signature, and assumes the note as his own. It is difficult to perceive why such adoption should not bind the party whose name is placed on the note as promisor, as effectually as if he had adopted the note when executed by one professing to be authorized, and to act as an agent, as indicated by the form of the signature, but who in fact had no authority.

It is however urged that public policy forbids sanctioning a ratification of a forged note, as it may have a tendency to stifle a prosecution for the criminal offence. It would seem, however, that this must stand upon the general principles applicable to other contracts, and is only to be defeated where the agreement was upon the understanding that if the signature was adopted the guilty party was not to be prosecuted for the criminal offence.

In the case of *Forsyth* v. *Day*, 46 Maine, 176, it was held that there might be a ratification and adoption of a forged note, by the person whose name appears as promisor.

We perceive no valid objections to the ruling of the court, and instructions given to the jury on this point.

The further inquiry is, whether the court properly declined to

adopt the prayer of the defendants, that the court should rule and instruct the jury that all the facts proved and relied upon by the plaintiffs were not sufficient to amount to an estoppel, or to show such an adoption of the signatures by Thomas Crafts, as will warrant a verdict for the plaintiffs.

The question upon this point is not whether in the opinion of the court, upon the facts proved, and such inferences as they might draw from them, the verdict should have been returned for the defendants, but whether there were not such facts presented in evidence as authorized the submission of the case to the jury, under proper instructions from the court as to the law, and from which facts the jury might infer and find an adoption of the signatures.

This question, though presented by the bill of exceptions, seems hardly raised upon the brief of the defendants.

The judge was, in our opinion, authorized to submit the evidence that had been introduced to the jury, under proper instructions. The evidence was not of that decided character that would exist under a case of an express declaration that the party would adopt the signature; but it had many facts, tending to satisfy the jury that he recognized and adopted the signatures as his own, and assumed the liability of an original promisor. There were shown the relationship of Thomas Crafts to the party who had signed his name; his knowledge of various similar acts on previous occasions, not disclaimed by him; his silence when the claim was made on him, as the party liable by reason of such signature; his statement that he knew that the paper was overdue and ought to have been attended to, that it should be arranged or settled, and that he had property enough to pay all the notes, but had not the ready money. The evidence also precluded any mistake of fact on his part, as to the character of the notes, and whether or not it was his personal signature upon them; and it did not therefore present the case of admissions or silence under a mistaken belief that the signatures were genuine. In this respect, a marked difference exists between the present case and that of *Hall* v. *Huse*, 10 Mass. 39. In that case, the ground of defence was wholly that of a mistake

on the part of the defendant as to the real character of the note. He had supposed the note to bear a genuine signature of his, and all his acts of adoption and ratification proceeded upon that false assumption. In the present case, the acts and admissions of the defendant were with full knowledge that the signatures were not in his handwriting.

In addition to the evidence already alluded to, there was evidence of the plaintiffs' withholding any proceedings to enforce their claims against other parties, after the alleged adoption of the signatures, and the fact that Martin Crafts left his place of residence for the time, and other circumstances to be considered by the jury, upon the questions submitted to them.

Without expressing any opinion upon the weight of the evidence, so far as the same is presented by the bill of exceptions, it is sufficient on this point to say, that the case was properly submitted to the jury to pass upon.

*Defendants' exceptions overruled.*

Exceptions were also filed on the part of the plaintiffs to the ruling of the court affecting a portion of their demand. The plaintiffs requested the court to instruct the jury " that the presumption is that a letter, deposited prepaid in the post-office, addressed to a person living and receiving his letters usually at the post-office at which it is addressed, reaches him."

This request was properly denied, and the instructions actually given were correct. In reference to the duty devolving upon the holder of commercial paper to give notice to indorsers, it has, for the purpose of facilitating the transmission of notices of that character, long been held, that the putting a letter into the post-office is not only good *prima facie* evidence, but sufficient proof to establish the fact of giving notice. The receipt of such notice is not open to be controlled.

But we do not understand that in other cases, where notice is required by the terms of the contract, or by force of a statute, the putting of a letter into the post-office is presumptive evidence of the fact of the receipt of such notice. It was held not sufficient as to the written notice required by the pauper laws, in

*Groton* v. *Lancaster*, 16 Mass. 110, and such notices were only authorized by subsequent statute provisions. In the cases of notices required to be given under the rules of court, it is deemed necessary to provide specially that depositing the same in the post-office shall be sufficient *prima facie.* S. J. C. 20th Rule in Eq.

The court properly ruled that there was not any conclusive presumption of law that the notice was received, and left it to the jury to find upon all the facts whether notice was received. The question was not one as to the sufficiency of the notice to charge Thomas Crafts as indorser, but the object of proving the receipt of it was to authorize certain inferences to be drawn from the fact of his silence after the actual perusal of the letter containing the notice, and being thus informed of the existence of certain notes and drafts apparently signed with his name.

*Plaintiffs' exceptions overruled.*