FRANCIS WARNER, PLAINTIFF IN ERROR, *v.* CEPHAS H. NORTON, ALBERT JEWETT, BENJAMIN C. BUSBY, JOHN C. PHELPS, JOHN J. PHELPS, ISAAC N. PHELPS, AND JAMES BEMAN, DEFENDANTS.

Where a sheriff was sued for taking goods under an attachment, which goods had been previously assigned under circumstances which were alleged to be fraudulent, it was proper for the court to charge the jury, "that if they believed, from the evidence, that the sale was made for the purpose of hindering, delaying, or defrauding creditors, it was invalid as against the defendant: and that whether the sale was or was not fraudulent was a question of fact, to be determined by the jury under all the circumstances of the case; that if the sale were secret, and no means taken to apprise the public of it, these were facts which threw suspicion upon the transaction, but did not make the sale fraudulent in law as against the defendant.

A decision on a motion for a new trial, being addressed to the discretion of the court, is no ground for a writ of error.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the northern district of Illinois.

It was an action of trespass brought by Norton, Jewett, & Busby, against Warner, for taking certain goods in a storehouse in the village of Lasalle. Warner justified the taking, as sheriff of Lasalle county, under certain writs of attachment against one Haskins, the former owner.

The jury found a verdict for the plaintiffs, assessing the damages at five thousand six hundred dollars and sixty-four cents.

The bill of exceptions shows the whole case, and it is inserted *in extenso*, because the questions of law involved have been decided in different ways by courts of justice, and elementary writers do not agree about them.

Be it remembered, that on the trial of this cause, plaintiffs in this action claimed title to the goods, for the taking of which this suit was brought, by a sale of the goods alleged to have been made by one Haskins to them, through one Isaac Anderson, as their agent.

The proof of the plaintiffs tended to show that Beman, one of the plaintiffs, had a claim as creditor against Haskins, of about $1,200, and that the firm of Norton, Jewett, & Busby, had a similar claim of about $3,000. That each of these claims had been put in the hands of one Anderson, by the owners thereof, respectively, for collection, with authority to settle or arrange in any way. That on the 10th of January, A. D. 1855, the goods were chiefly in a hardware storeroom, and in the tin shop attached thereto, in the village of Lasalle; and that, up to that time, Haskins had been carrying on the business of a hardware retailer, and of manufacturing tinware in his tin shop adjoining; that while he was absent, his business was conducted for him by one Atherton, as his head clerk, who employed the operatives and superintended them; the business being done in the name of Haskins; that on the tenth of January, 1855, Haskins sold his stock of hardware and tinware to Beman and the firm of Norton, Jewett, & Busby, through Anderson, as their agent as aforesaid, Anderson cancelling the aforesaid debts, and giving his notes on time, to Haskins, for the balance of the price agreed upon; that thereupon, by way of putting the purchaser in possession, Haskins, Anderson, and Atherton, being in the storeroom, Haskins got the key of the front door, and gave it to Anderson, and Anderson gave the key and charge of the store and tin shop to Atherton, who up to that time had been carrying on the business for Haskins, but then undertook to act for Anderson.

That Anderson left town, and about the same time Haskins left town, and neither of them returned until after the taking by the defendant, (Haskins never having returned to reside there, and never having since resided there, or interfered with the goods in any way after the sale;) that Cephas H. Norton, Albert Jewett, and Benjamin Busby, were the ostensible partners of the firm of Norton, Jewett, & Busby; but that Ander-

son, in preparation for the bringing of this suit, was informed by the ostensible partners that there were special partners; that John C. Phelps was a special partner, and a brother of John C. Phelps.

There was no distinct evidence in the case to show that John J. Phelps and Isaac N. Phelps, or either of them, were members of the firm of Norton, Jewett, & Busby, or that they ever were in any way interested in the property taken; but the witness stated he believed or supposed the parties named in the record were the parties in interest, but he did not actually know it of his own knowledge.

[It is but fair to state, that while this point was made by the defendant, it was not pressed or insisted on, and the court thinks the plaintiffs' counsel might so infer, and therefore might not have thought it necessary to furnish additional proof.]

Plaintiffs' proof further tended to show that defendant was sheriff of Lasalle county, and that, as such, he did, on the ninth day of February, A. D. 1855, take and carry away the said hardware and tinware. Defendant offered evidence tending to prove, that before and at the time of said sale, said Haskins was in failing, and that certain creditors (by judgment) had sued out writs of attachment, as set forth in defendant's special pleas, against the goods of said Haskins; and that said taking, complained of in this suit, was the levying of legal process upon the said property as the property of said Haskins.

Defendant further offered evidence tending to prove that said sale was made secretly; but several of the plaintiffs' witnesses stated the sale was not made secretly, but that while the invoice was being made out, people were coming in and out of the store, as usual; that no steps were taken by any one to make it known till after said levy; that from the time of the sale, said Atherton continued to control the goods and the business as before, and to all appearance was doing so for Haskins, as he had done before; that he made sales to customers as formerly, without notice to any one of the change in proprietors, and in some instances made out the bills and receipts of said sales to customers in the name of Haskins.

That no change was made in keeping the books; that the servants and operatives about the store and tin shop continued to work under the direction of Atherton, with no knowledge of any sale, and supposing the business was being carried on as formerly, in the name and for the use of Haskins; but it did not appear that any of these things were authorized by the plaintiffs, or known to them. And that this condition and course of things continued until said goods were seized by said sheriff on the 9th day of February, 1855.

*Warner v. Norton et al.*

After the evidence was given to the jury, the court charged as follows, substantially:

1. That the jury must be satisfied, from the evidence, that the plaintiffs named in the declaration had a joint interest in the property sued for, or they must find for the defendant.

2. That if the jury believe, from the evidence, the sale was made for the purpose of hindering, delaying, or defrauding creditors, it was invalid as against the defendant.

3. That whether the sale was or was not fraudulent, was a question of fact, to be determined by the jury under all the circumstances of the case.

4. That if the sale was secret, and no means taken to apprise the public of the sale, these were facts which threw suspicion upon the transaction, but did not make the sale fraudulent in law as against the defendant.

5. That the jury were to determine the facts as to the possession after the sale. If a sale is made by a party, and the vendor remains in possession, it is ordinarily a badge of fraud, and requires explanation. But in this case there did not seem to be any evidence tending to show that the vendor (Haskins) was in possession after the supposed sale, except that Atherton retained possession, and as to his possession the jury would determine. If it was the possession of the plaintiffs, and not of Haskins, the sale was not necessarily fraudulent.

6. The court declined to charge the jury, that, as a matter of law under the facts in evidence, the sale was fraudulent as to the defendant; but left it to the jury to decide whether the sale was in good faith, and for an honest purpose.

After verdict, a motion for a new trial was overruled. To which instructions, as then given, the defendant's counsel, and to each severally, then and there excepted, and also to the overruling the motion for a new trial.

Exceptions allowed.                THOMAS DRUMMOND.   [seal.]

The case came up upon this exception, and was argued by *Mr. Dickey* for the plaintiff in error, and *Mr. Badger* for the defendants, upon which side there was also a brief by *Mr. Badger* and *Mr. Carlisle*.

*Mr. Dickey* made the following points:

The question, whether a sale of goods, unaccompanied by a change of possession, is good as against creditors, has been a vexed question in England and in many of the United States. The weight of American authority is thought to be against the validity of such sales. See 2 Kent's Com., 515 to 529, where the subject is fully discussed.

The decisions of the Federal courts are against the validity of such sales—and this is considered "a settled principle in Federal jurisprudence." (2 Kent, 521; Hamilton *v.* Russell, 1 Cranch, 309.)

· This sale was made in Illinois, and the Supreme Court of that State have adopted and adhered to what Chancellor Kent calls the more wise, sound, wholesome, and true doctrine, and have held, in Thornton *v.* Davenport, 1 Scam., 296, that where possession of goods is permitted to remain with the vendor, the sale is fraudulent, unless the retaining is consistent with the deed. The same doctrine is recognised in Powers *v.* Green, 14 Illinois, 386; so that there is no debate about the law in that State on this question—the decision of the Supreme Court of the United States and of the Supreme Court of that State concurring.

This change of possession, to be effective, must be *actual*, and *not colorable*. (2 Kent Com., 525.)

It must be substantial and exclusive. (2 Kent Com., 518.)

It must be an apparent, open, avowed, notorious change of possession. The purpose must not only be honest, but appearances must agree with the real state of the case. (2 Kent Com., 553; Burrell on Assignments, 303.)

This change of possession must also be *continued*. If Atherton did agree to hold possession of said goods and conduct said business for Anderson, he did not in fact do so; and if he violated his duty to Anderson, *that* is Anderson's misfortune. Even if Atherton was acting for Anderson in good faith all the time, still Anderson, by his agent, Atherton, permitted the *visible* possession to remain in Haskins, and the question for the jury ought to have been not merely whether this possession of Atherton was that of Anderson, and not that of Haskins, but was an apparent, visible, open, avowed, substantial change of possession effected.

The court held that an actual change of possession was sufficient; but we insist that such change of possession, to be good against creditors, must be not only actual and *bona fide*, but must be *apparent*, avowed, open, and not secret.

Again: plaintiffs claimed Anderson's title to said goods; and to show title in themselves, proved that Anderson made the purchase for James Beman, and for the members of the firm of Norton, Jewett, & Busby.

· Who were the members of this firm? The plaintiffs proved on that subject that Cephas Norton, Albert Jewett, and Benj. C. Busby, ostensibly constituted the firm; and that in preparation for this suit, these ostensible partners told witness that there were special partners, and that John C. Phelps was one

of these special partners, and a brother of said John C. was another special partner.

There was no direct evidence that John L. Phelps or Isaac N. Phelps were members of the firm—all that was shown on that subject was, that witness had no personal knowledge, but supposed the parties to the record were the parties in interest.

This constitutes no evidence at all that John L. Phelps or Isaac N. Phelps had any interest in the property. It was essential, to maintain the action, for plaintiffs to show that they all jointly owned the property in question. This point was distinctly made, and yet the court submitted the question to the jury. This was error.

Whether there is any evidence on a point, is a question of law for the court. Whether the evidence is sufficient to convince or satisfy, is a question for the jury. (1st Greenleaf Ev., p. 63, sec. 49.)

The court certifies, that although this point was made, it was not pressed. We reply, that it was not waived; and when such a point is distinctly made and overruled, courtesy requires that it should not be pressed. It is sufficient that it was not waived.

The counsel for the defendants in error made the following points:

The first instruction to the jury was, that they must be satisfied that the plaintiffs named in the declaration had a joint interest in the goods, or they should find for the defendant.

This instruction in form is unexceptionable, and, if there was any evidence of such ownership, was properly given to the jury. The plaintiff in error, as shown by the record, (p. 19,) objected to the admissibility of evidence offered for that purpose, but did not insist upon his objection.

Therefore, he cannot raise the objection here; but, on the contrary, it must be held waived; for, in the case of Walton v. United States, already cited, the court say: "It is true that the bill of exceptions states that the evidence was objected to at the trial; but it is not said that any exception was then taken to the decision of the court; so that, in fact, it might be true that the objection was made, and yet not insisted on by way of exception."

In our case, the record shows that the objection was not insisted on.

Again: in the case of Phelps v. Mayer, already cited, the court say, in substance, that objections to evidence must be insisted on by way of exception, for, if this is done, the opposite party may then supply the defect. (See, also, Hinds's Lessee v. Longworth, 11 Wheaton, 199.)

Therefore, the objection to the evidence being waived, by not being insisted upon by way of exception, no objection can now be made, and therefore there was evidence to be left to the jury on the point of ownership

But, if there was not, that question cannot be raised upon an instruction formally right, but must have been specially presented in the court below; for, in Garrard *v.* Reynolds's Lessee, 4 Howard, 123, it was held, that whether there was evidence to be left to a jury, was a question which could not be considered by this court, unless the opinion of the court below had been asked thereon, and an exception regularly taken.

Therefore, in our case the question cannot be here raised.

The substance of all the other instructions is this:

The court having declined to charge the jury that the sale was fraudulent in law, left it to them, under all the circumstances, to say whether the sale was or was not made to delay, hinder, or defraud creditors; telling them that if the sale was secret, suspicion was thrown upon it thereby, but that it did not thereby become fraudulent in law; and, leaving them to decide as to the possession after the sale, instructed them that if the possession of Atherton was the possession of the plaintiffs, (defendants in error,) the sale was not necessarily fraudulent.

Now, there could be no possible ground for the judge below declaring the sale void in law. Had Haskins, the vendor, remained in possession, the case would have been like Edwards and Harben in the King's Bench, and Hamilton and Russell in this court; but it is certain that Haskins did not personally have possession after the sale, for he left the town, ceased altogether to reside there, and was never there for any purpose until after the taking of the goods by the plaintiffs in error. It was proved that an inventory of the goods was taken, the price agreed upon and paid, the door-key given to the agent of the defendants in error, and by him delivered to Atherton, the former salesman of Haskins, who undertook to hold for the plaintiffs in error. Here, then, was evidence of a change of possession. All might indeed be illusive and fraudulent; but that was a question for the jury under all the circumstances of the case; and until that question was decided, no other than a hypothetical instruction could be given.

And the court did instruct the jury, in effect, that if the possession after the sale was in Haskins, the sale was necessarily fraudulent.

To this instruction the plaintiffs in error cannot object, though the defendants in error, had the verdict been against them, would have had just cause of complaint.

For if it were necessary to our case, and were allowable for us to question any decision of this court, we should contend that the rule laid down in Hamilton *v.* Russell, (1 Cranch, 310,) founded upon Edwards *v.* Harben, in 2 Term Reports, cannot be supported. In England, Edwards and Harben has been long since overruled; first questioned, then impugned, and finally denied. The cases fully justify the position of the very learned Mr. Smith, in his Leading Cases, (1 vol., p. 41, of 4 Amer. ed.,) in these words:

"It may therefore be safely laid down, that, under almost any circumstances, the question, fraud or no fraud, is one for the consideration of the jury;" and again, page 40: "Though in Edwards *v.* Harben it was laid down, in the express terms above stated, that an absolute sale, without delivery of possession, was in point of law fraudulent, the tendency of the courts has lately been to qualify that doctrine, and leave the whole circumstances of each case to a jury, bidding them decide whether the presumption of fraud deducible from the absence of possession shall prevail."

And the admission of plaintiff's counsel, (whose interest it was to maintain the doctrine of Edwards and Harben,) in Wood *v.* Dixie, 7 Q. B., 894, is in these words: "Some doubt has existed whether upon certain facts, as, for instance, want of possession, fraud is a question of law to be decided by the court, or of fact for the jury; but it seems to be now established that the question is for the jury."

This position of Mr. Smith is further supported by Martindale *v.* Booth, 3 B. and Ad., 498, in which Parke, J., says: "The *dictum* of Buller, J., in Edwards *v.* Harben, has not been generally considered in subsequent cases to have that import. The want of delivery is only evidence that the transfer was colorable." It is fully sustained by the numerous cases cited by him, and especially by Benton *v.* Thornhill, 2 Mar., 427, and Latimer *v.* Batson, 4 Barn. and C., 652, in the former of which, Ld. Ch. J. Best dissented from the doctrine of Edwards *v.* Harben, when assumed by counsel; and in the latter, the court notices and in effect repudiates, as furnishing a general rule, what was said by Lord Ellenborough in Wordall *v.* Smith, 1 Camp., 332.

(These two cases also show that the question of possession under the circumstances of our case was for the jury, and not for the court, and was therefore properly left to them by the court below.)

It may therefore be assu r ed with confidence, that the stringent rule laid down in Edwards *v.* Harben is entirely exploded in England, and there want of possession by the vendor is only

a badge of fraud to be considered by the jury. Why should a rule adopted by this court from Edwards *v.* Harben be here maintained, after the foundation of the rule has been utterly demolished in the country from which it was taken? It does not tend to expose and defeat fraud, any more than to disappoint an honest purchaser. Every case of real fraud will be sufficiently reached by making want of possession a badge or evidence of fraud, according to Twyne's case, whilst an indiscriminating disallowance of all sales which are not followed by possession must in many cases do injustice.

But whether the rule in Edwards *v.* Harben be maintained in all its strictness or not, is in our case immaterial. Here, possession was taken by the purchaser. It has been so found by the jury. There was evidence proper to be left to the jury of that fact; but if there was not such evidence, no objection can be made therefor, because there was no special prayer for an instruction that there was not such evidence as required by this court in the before-cited case of Garrard *v.* Reynolds's Lessee, 4 How., 123; and consequently the whole case was for the jury on the question of fraud.

As to the alleged secrecy of the sale, the court instructed the jury that secrecy threw suspicion on the transaction, but did not make it fraudulent in law.

Now, this is giving to secrecy precisely the effect properly belonging to it according to Twyne's case, *dona clandestina sunt semper suspiciosa*. In Twyne's case, the judges in the Star Chamber, passing on fact as well as law, gave what effect they pleased to the suspicious secrecy, with the other circumstances, in drawing the conclusion to which they came, that the sale made by Twyne was fraudulent. In our case, the secrecy was left, with the other circumstances, to the jury, to draw the inference which upon the whole evidence was in their judgment just. No exception can be taken to this, for secrecy has never been by any judicial decision withdrawn from the place it occupies amongst the other signs or badges of fraud, and dignified, like want of possession, with an unexplainable and resistless legal effect.

Of course, the exception for error in the refusal to grant a new trial is merely idle, after the decisions of this court in Marine Insurance Company of Alexandria *v.* Hodgson, 6 Cr., 206; Barr *v.* Grat's Heirs, 4 Wheat., 213; and Blount's Lessee *v.* Smith, 7 Wheat., 248.

Mr. Justice McLEAN delivered the opinion of the court.

This case is brought before us by a writ of error from the northern district of Illinois.

An action of trespass was commenced by Norton et al. against Warner, charging him with having seized and carried away personal property of the value of ten thousand dollars. The defendant pleaded not guilty, and by several special pleas set up that certain creditors of Augustus A. Haskins, who had left his residence at Lasalle, procured a writ of attachment, under the statutes of Illinois, which was directed to the defendant, as sheriff, in virtue of which he attached the personal property of Haskins, which is the trespass charged, &c.

The bill of exceptions taken on the trial will show the points of law which were made on the facts. The proof of the plaintiffs tended to show that Beman, one of the plaintiffs, had a claim as creditor against Haskins for the sum of twelve hundred dollars, and that the firm of Norton, Jewett, & Busby, had also a claim of about three thousand dollars; that each of these claims had been put into the hands of one Anderson for collection, with authority to settle them; that on the 10th of January, 1855, the goods were chiefly in a hardware store-room, and the tin shop attached thereto, in the village of Lasalle; that up to that time Haskins had been carrying on the business of a hardware retailer and manufacturer of tin ware; that while he was absent the business was conducted by one Atherton, his head clerk, who employed the operatives and superintended their work; that on the 10th of January, 1855, Haskins sold his stock to Beman, and the firm of Norton, Jewett, & Busby, through Anderson as their agent, Anderson cancelling the aforesaid debts, and giving his notes on time to Haskins for the balance of the price agreed upon; and thereupon, by way of putting the purchaser into possession, Haskins, Anderson, and Atherton, being in the store-room, Haskins got the key of the outer door, and gave it to Anderson, and Anderson gave the key and charge of the store and tin shop to Atherton, who, up to that time had been carrying on the business for Haskins, but then undertook to act for Anderson.

Anderson and Haskins left Lasalle, and did not return until after the attachment was laid on the goods. Haskins never returned to reside there, and exercised no ownership over the goods after the sale. Norton, Jewett, & Busby, were the ostensible partners of their firm, but they informed Anderson that John C. Phelps and his brother were special partners. There was no further evidence to show the interest of the Phelpses, except the belief of the witness that they were parties, though he could not so state from his own personal knowledge. An objection to this defect of proof was made, but not insisted on.

The plaintiffs' proof further tended to show that the sheriff, on the 9th of February, 1855, did take property attached, and

removed it; and evidence was offered to show that, before and at the time of said sale, Haskins was in failing circumstances, and that certain creditors had sued out writs of attachment, as set forth in defendants' special pleas, against the goods of said Haskins, and that the taking of the property complained of was by legal process.

Defendant offered further evidence, tending to prove that said sale was made secretly, but several of the plaintiffs' witnesses stated the sale was not made secretly, and that, while the invoice was being made out, people were coming in and going out of the store as usual; that no steps were taken by any one to make the sale known until after the attachment was laid; that from the time of the sale, Atherton continued to control the goods and the business as before, and to all appearance was doing so for Haskins; that sales were made to customers as formerly, without notice to any one of the change of proprietors, and, in some instances, the bills and receipts of sales to customers were made out in the name of Haskins. No change was made in keeping the books; that the servants and operatives about the store and tin shop continued to work under the direction of Atherton, with no knowledge of any sale, and supposing the business was being carried on as formerly, and for the use of Haskins; but it did not appear that any of these things were authorized by the plaintiffs or known to them; and that this condition and course of things continued until the goods were seized by the sheriff.

After the testimony was closed, the court charged the jury: First, they must be satisfied, from the evidence, that the plaintiffs named in the declaration had a joint interest in the property sued for, or they must find for the defendant.

The jury found for the plaintiffs; which shows they were satisfied with the evidence on the point made, or considered the objection abandoned. If it were not insisted on in the court below, it cannot be raised here. There is no error in this charge of the court.

The second, third, and fourth charges were, "that if the jury believe from the evidence the sale was made for the purpose of hindering, delaying, or defrauding creditors, it was invalid as against the defendant; and that whether the sale was or was not fraudulent was a question of fact, to be determined by the jury under all the circumstances of the case. That if the sale were secret, and no means taken to apprise the public of it, these were facts which threw suspicion upon the transaction, but did not make the sale fraudulent in law as against the defendant."

It is insisted that the sale was void as matter of law against

creditors, and should have been so held by the court; and the case of Hamilton *v.* Russell, 1 Cranch, 310, 1 Curtis, 415, is cited as sustaining this position. In that case, Hamilton made an absolute bill of sale for a slave on the 4th of January, 1800, which was acknowledged and recorded on the 14th of April, 1801. The slave continued in the possession of the vendor until an execution was levied on him as the property of the vendor. Trespass was brought against the plaintiff in the execution, who directed the levy to be made. The court held, under the statute of Virginia against frauds, that an absolute bill of sale, unless possession "accompanies and follows" the deed, is fraudulent; and the case of Edwards *v.* Harben, 2 Term Rep., 587, was cited. It is admitted that the statute is in affirmance of the common law.

In his 3d volume of Commentaries, Chancellor Kent has an interesting chapter on this subject, in which the case of Edwards *v.* Harben, and many other authorities, are cited; and he favors the doctrine, that unless the possession of goods follows the deed, it is fraudulent *per se.* But he states many exceptions to this rule, as where the possession of the vendor is consistent with the deed or the circumstances of the case. And he says, in Steward *v.* Lambe, 1 Brod. and Bing., 506, the court of C. B. questioned very strongly the general doctrine in Edwards *v.* Harben, that actual possession was necessary to transfer the property in a chattel, and the authority itself was shaken. And he observes, the conclusion from the more recent English cases would seem to be, that though a continuance in possession by the vendor be *prima facie* a badge of fraud, yet the presumption of fraud may be rebutted by explanations.

In the case of Wood *v.* Dixie, 7 Q. B., 894, the counsel, who was interested in maintaining the doctrine of Edwards *v.* Harben, admitted that "some doubt has existed whether upon certain facts, as, for instance, want of possession, fraud is a question of law to be decided by the court, or of fact for the jury; but it seems to be now established that the question is for the jury." In Martindale *v.* Booth, 3 B. and Ad., 498, Parke, Justice, says, the dictum of Buller, Justice, in Edwards *v.* Harben, has not been considered in subsequent cases to have that import; the want of delivery is only evidence that the transfer was colorable. In Benton *v.* Thornbell, 2 Marsh., 427; Lattimer *v.* Batson, 4 Barn. and Cress., 652; the same doctrine is laid down. In the more modern English cases, the stringent doctrine of Edwards *v.* Harben has been departed from; and the want of possession of chattels purchased is considered evidence of fraud before the jury. In Kidd *v.* Rawlin-

son, 2 Bas. and Pull., 59, Lord Eldon admitted that a bill of sale of goods might be taken as a security on a loan of money, and the goods fairly and safely left with the debtor.   And this decision conformed to Lord Holt's view, in Cole *v.* Davis, 1 Lord Raymond, 724; and Lord Eldon, many years afterwards, declared, in Lady Arundell *v.* Phipps, 10 Ver., 145, that possession of goods by the vendor was only *prima facie* evidence of fraud.   In Eastwood *v.* Brown, 1 Ryan and Moody, Lord Tenterden held, want of possession was only *prima facie* evidence of fraud.

It would seem to be difficult, on principle, to maintain that the possession of goods sold is, *per se*, fraud, to be so pronounced by the court, as that cuts off all explanation of the transaction, which may have been entirely unexceptionable. If circumstances, at law, may be proved to rebut the presumption of fraud, the case must be submitted to the jury.

But the case before us is not similar to that of Hamilton *v.* Russell.   There was a change of possession in the goods purchased by Anderson, by the delivery to him of the key of the outer door of the storehouse, which he delivered to Atherton, who had agreed to continue in the business as the agent of the purchasers.   From the time of the purchase, Haskins had no possession of the property, nor did he exercise any acts of ownership over it.   He was absent from Lasalle from the time of the sale until after the attachment was laid.

Now, whether this was a colorable delivery or not, was a matter of fact for the jury, and not a matter of law for the court. It is clearly not within the case of Hamilton *v.* Russell.

Few questions in the law have given rise to a greater conflict of authority than the one under consideration.   But for many years past the tendency has been, in England and in the United States, to consider the question of fraud as a fact for the jury under the instruction of the court.   And the weight of authority seems to be now, in this country, favorable to this position.   Where possession of goods does not accompany the deed, it is *prima facie* fraudulent, but open to the circumstances of the transaction, which may prove an innocent purpose.   But if such explanation may be given, it is a departure from the stringent rule in the case of Edwards *v.* Harben.

It is urged that the fourth instruction is erroneous, as the jury were told, though the sale was secret, and no means taken to make it public, it was not fraudulent in law against the defendant.   Whilst in the old cases it was held that the possession of the vendor of goods sold was fraudulent against creditors, no case, it is believed, has been so held by the court on the alone ground of secrecy in making the contract.   It is

a circumstance connected with other facts from which fraud may be inferred. But if the secrecy supposed amounted to absolute fraud, yet the court could not have so pronounced in this case, as there was evidence controverting the supposition of secrecy, which the court could not properly take from the consideration of the jury.

The fifth and sixth charges were, that the jury were to determine the facts as to the possession after the sale; and that, if a sale is made by a party, and the vendor remains in possession, it is ordinarily a badge of fraud, and requires explanation; and under the sixth they left the case to the jury, to determine whether the sale was in good faith and for an honest purpose; which instructions were, as we think, correct, and in accordance with the general doctrine on the subject.

A decision on a motion for a new trial, being addressed to the discretion of the court, is no ground for a writ of error.

The judgment of the Circuit Court is affirmed.