NELSON & CO. v. GOOD.

1. Insolvency of the vendor of personal property, pendency of suits against him, the sale of all his property, and retention of possession of the goods sold, to all appearances as owner, constitute such strong evidence of fraud that they will be regarded as conclusive unless explained by the most satisfactory testimony, but are not presumptions of fraud irrebuttable by any evidence. *Cases reviewed.*

2. This court concurred with the Circuit judge in holding these badges of fraud to have been satisfactorily explained in this case.

3. A debtor may legally sell his property to one of his creditors, pending suit by others, and may retain possession as bailee for hire or as agent of the vendee.

4. Excessive compensation allowed by the vendee to such vendor, as his agent. after the sale, is a circumstance to be weighed in determining the *bona fides* of the transaction, but is not conclusive of fraud in the sale.

Before COTHRAN, J., Greenville, November, 1882.

This was an action by Samuel A. Nelson & Co. and William Bryce & Co., judgment creditors of Warren S. Good, against said Good and Williams Cox, to set aside a sale of a stock of goods. by Good to Cox.

The master's report was as follows :

The master to whom it was referred to take the testimony in the above-entitled cause, and to report the same together with his conclusions of fact, begs leave to report that he has held references,. and from the evidence adduced and herewith filed he respectfully submits the following as his conclusions of fact, to wit :

1st. That the defendant W. S. Good was engaged in the mer-- cantile business and purchased goods of the plaintiffs, for which he gave the notes on which judgments were obtained against him,. as set forth in the complaint herein.

2d. That on December 18th, 1879, the defendant Williams. Cox became surety for defendant Good on two notes, payable to the order of Butler, Clapp & Co., one of which was for $322.16 and the other for $324.14. The first became due on November 1st, 1880, and the latter on December 1st, 1880.

3d. That on February 28th, 1880, defendant Good, who knew he was insolvent, disposed of his entire stock of goods (amounting in value, at actual cost, to $531.40,) to defendant Cox to secure him against loss on account of his suretyship on said notes to Butler, Clapp & Co., and on the same day executed and delivered to defendant Cox a bill of sale to said stock of goods with an inventory of the same attached, which bill of sale and inventory were duly recorded on said date in the office of the register of mesne conveyance for the county aforesaid. That defendant Cox did not know that defendant Good was insolvent when he bought said stock of goods, and he would not have bought them had he not been surety on said notes.

4th. That defendant Cox never took possession of said stock of goods, but employed defendant Good, who is his son-in-law, as his agent to carry on and manage the business, and authorized him to sell said stock of goods and to buy other goods in order that he might close up the business without sacrificing the original stock, and agreed to pay defendant Good for his services a salary of $400 a year out of the proceeds of the sales of said stock of goods. That, in pursuance thereof, defendant Good remained in charge of said stock of goods, bought other goods on time as agent, sold and disposed of the same, and about the middle of April, 1881, closed out the business. That defendant Good, as agent as aforesaid, had sole charge of the business and never made any statements of the same to defendant Cox, nor did defendant Cox ever ask for or require of him a statement, and it does not appear that he took any interest in the same and knew nothing of the management thereof, nor of the profits or losses, nor of the debts incurred on account of the same, but left the whole matter to defendant Good, he, the said Cox, being a farmer, with very little business capacity and experience.

5th. That no notice was given by advertisement, or otherwise, of the change of the business, when defendant Good became the agent of defendant Cox. There was no sign then nor before over the store-house, and externally there was nothing to show that any change had been made. That on the ledger kept by defendant Good from 1876 to the time he closed out the business, as agent, as aforesaid, there is an account kept of goods purchased by defendant Cox, and various amounts of cash and cotton are placed to his credit, and there is no change in the mode of keeping said account after the stock of goods were sold to defendant Cox, from that prior to the same, nor are there any changes made in the mode of keeping said books as to the general business done before or after that time.

6th. That while defendant Good was acting as agent for defendant Cox, his clerk, Norman Good, signed two receipts dated September 7th, 1880, in the name of W. S. Good, for goods purchased on account.

7th. That on June 23d, 1880, defendant Good made his return

P

under oath to the county auditor, in which he included among other items of personal property, by and with an understanding with defendant Cox, goods, merchandise, &c., to the value of $400, and on the same day, and at the same time, defendant Cox made his return to said auditor, and did not include any goods, merchandise, &c. That on June 21st, 1881, defendant Cox made another return under oath to said auditor, in which he did not include any goods, merchandise, &c.

8th. That on December 1st, 1880, the sheriff levied on said stock of goods, and about three or four weeks prior to that date, defendant Good said that said stock of goods were worth not less than $1,500, and spoke of them as his goods.

9th. That on December 12th, 1879, defendant Good purchased from his wife the house and lot in which they lived, and paid her $500 in cash for it, which he mortgaged to Ferguson & Miller, merchants in this place, (on the same day that he executed and delivered the said bill of sale of said stock of goods to defendant Cox,) for $475, to secure to them a debt of $326, and they were to pay him the difference in money, which they have not done.

10th. That on page 481, in the day book kept by defendant Good, while in business for himself, and as agent for defendant Cox, there is an entry made of "W. S. Good, Agt., commenced business at Marietta, S. C., February 28th, 1880," which has the appearance of having been originally 1881 and having been changed to 1880, and the same entry is made on the back of said book, the date and month of which appear to have been altered, and also another entry of "W. S. Good commenced business at Marietta, S. C., April 8th, 1876," which appears to have been originally 1879. The same entries are made in the back of said ledger, and they have not been changed.

11th. That on September 5th, 1879, defendant Good made and delivered to Johnston, Crews & Co. his two promissory notes, one for $283.88 and the other for $88.57; the first became due on November 15th, 1879, and the latter on January 15th, 1880, and on November 14th, 1879, he gave the said Johnston, Crews & Co. another promissory note for $211.22, payable sixty days after date. That no part of said notes were paid with the exception of $40, and suit was commenced on same on March 8th, 1880,

and judgment was obtained thereon by default against defendant Good on April 27th, 1880, for $556.63.

12th. That on September 17th, 1878, defendant Good made and delivered to William C. Browning & Co. his promissory note for $165.93, payable four months after date, on which he made sundry payments, but, failing to pay the whole amount due thereon, suit was commenced against him on February 21st, 1880, and judgment was obtained by default on March 15th, 1880, for $39.98.

13th. That defendant Cox has paid the said notes, for which he became surety, to the said Butler, Clapp & Co., out of the proceeds of sales from said stock of goods, with the exception of $110 paid out of his own money, and he also gave two notes to said Butler, Clapp & Co. on February 3d, 1881, for $250 each for goods bought of them by defendant Good, as his agent, which he has paid, and he has never received anything on account thereof from the sale of said stock of goods or from defendant Good except his account for goods gotten by himself, amounting to $193.86, and therefore he lost $416.14 by being involved in said business.

14th. That defendant Cox is a man of unquestionable character and integrity, and did not intend to perpetrate any fraud upon the plaintiffs.

All of which is respectfully submitted November 15th, 1882.

S. J. DOUTHIT, Master.

The Circuit decree was as follows:

This is a joint action by the plaintiffs above named, against the defendants, to set aside as fraudulent the sale of a stock of goods, by the first-named defendant to the latter, and to subject the same, or the value thereof, to the payment of certain executions of the plaintiffs heretofore obtained in this court against the defendant Good. The matter was referred to the master to take testimony and report his conclusions of fact to this court. Pursuant to said order the master has taken the testimony and made his report, to which exceptions have been filed on behalf of the plaintiffs and defendants. In the view which I have taken of the case, it will not be necessary to deal with these exceptions *seriatim*.

The pivotal point of the whole case is the alleged fraudulent sale of the stock of goods by Good to Cox on February 28th, 1880. It appears from the evidence taken that Good was a merchant at that time, and previously doing business at Marietta; that Cox, his father-in-law, a farmer, without knowledge of mercantile affairs, lived in the neighborhood; that Butler, Broome & Clapp, merchants in the city of New York, were creditors of the said Good, and sent one of their traveling agents to look after his indebtedness to them; that said agent and Good went together to Cox's and induced him to become surety upon Good's indebtedness to Butler, Broome & Clapp; that Cox was ignorant at the time of Good's insolvency, but afterwards, upon discovery of that fact, he procured an assignment to himself, by sale, of the entire stock of goods, the inventoried value of which, at prime cost, being about $530; that Cox's liability on account of his suretyship was about $650; that the deed of bargain and sale of the stock of goods was recorded in the register's office at Greenville on the day that it was executed. By the terms of the trade Good was to retain possession of the goods, and by the addition of other goods to be paid for by Cox, the original stock of $530 worth, it was believed, could be advantageously disposed of; the Butler, Broome & Clapp indebtedness was to be paid off as well as the bills for additional merchandise, from the proceeds of sales, and Good was to receive wages for attending to the business, at the rate of $400 per annum. The Butler, Broome & Clapp indebtedness was thus paid off, excepting the sum of $110 paid by Cox, who sustained a total loss in connection with the said mercantile business of over $400.

It is scarcely necessary to cite authorities in support of the proposition that, in the absence of a bankrupt law, a debtor in failing circumstances has the right to prefer one *bona fide* creditor over another. Was Cox a *bona fide* creditor of Good? I think there can be no doubt of this.

But it is urged by the plaintiffs' counsel that the retention of possession of the stock of goods by Good, the vendor, after the sale to Cox, was *per se* fraudulent. Since the statutes of Elizabeth upon this subject, and the numerous decisions of our own courts, (*Smith* v. *Henry*, 2 *Bailey* 118; *Maples* v. *Maples*, *Rice*

*Ch.* 300, and many others,) it is undeniable that, as an abstract proposition, this is true. But the relation of vendor and vendee must continue in order to bring the case within the operation of the statute. It does not forbid the vendor's becoming the agent of the vendee. In such case the vendor assumes a new character, and if the sale is for valuable and sufficient consideration, and is, in other respects, fair, open and *bona fide*, it ought to be upheld.

The testimony satisfies me that the relation of principal and agent subsisted between these defendants on and after February 28th, 1880, and I do not see enough in the case, so far certainly as Cox is concerned, to impeach the validity of the sale for the want of any of these qualities. Very much was said at bar as to the manner in which Good conducted the business after the sale to Cox, and justly said, as to the loose, negligent and unskillful manner in which it was done, not to use any harsher terms. Cox's loss of over $400, and he, the preferred creditor, sufficiently attests the unskillfulness (if not the infidelity) of the agent. But the testimony fails to show that Cox must suffer the consequences of this beyond the loss which he too has sustained. The conclusion reached seems to me to be well sustained by the reasoning in the leading case of *Guignard* v. *Aldrich*, 10 *Rich. Eq.* 253, which, in many of its features, bears a close resemblance to the case in hand.

Wherefore, it is ordered, adjudged and decreed that the exceptions to the master's report be and they are hereby overruled ; that the complaint herein be dismissed, and that the defendants have judgment against the plaintiffs for their costs.

The defendants appealed upon the following exceptions :

1. Because it is submitted that his Honor erred in holding that the defendant Good was the *bona fide* agent of defendant Cox from February 28th, 1880, until the business was closed, and in overruling plaintiffs' exception to the master's report to that effect.

2. Because, even if the agency of Good were admitted, it is submitted that his Honor erred in holding that it could so change

his character of vendor in possession as to free the sale from fraud, especially when such retention of possession was part of the original transaction and agreement.

3. Because it is submitted that his Honor erred in holding that there was a sufficient delivery of the goods to work a change of ownership.

4. Because it is submitted that his Honor erred in not holding that the fraud of Good (which is virtually admitted by the decree) rendered the whole transaction void as against creditors.

5. Because it is submitted that his Honor erred in not declaring the sale void, upon the ground, among others, that the retention of a salary by Good, to be paid him out of the stock of goods, was an interest in stock sufficient to render the transaction fraudulent.

6. Because it is submitted that his Honor erred in holding that the agreement was, that said goods were to be bought and paid for by Cox, while the testimony shows that they were to be paid for out of the proceeds of the stock.

7. Because it is submitted that his Honor erred in holding in substance that defendant Cox paid to Butler, Broome & Clapp $110 out of his own funds, while the testimony shows that Cox stood charged upon the books with a balance of $193 for goods bought by him out of the stock in controversy.

8. Because it is submitted that his Honor erred in overruling plaintiffs' exception to so much of the master's report as stated that defendant Cox had no intention "to perpetrate a fraud upon the plaintiffs," this being a question of law which the master had no right to decide.

9. Because it is submitted that the testimony and report of the master establish a clear case of a sale fraudulent and void *per se.*

10. Because it is submitted that, even if the transactions were capable of explanation under the decisions in this State, yet they have not been explained, and, therefore, the presumption of fraud has not been removed, and his Honor should have so decreed, and ordered the proceeds of the stock to be applied to the payment of the claims of plaintiffs.

*Mr. Julius H. Heyward,* for appellants.

I. Taking the case as stated in the decree of the Circuit Court the sale is fraudulent and void *per se*, and the presumption of law cannot be rebutted or explained. 3 *Rep.* 80; 2 *T. R.* 587; 1 *Esp.* 205; 1 *Campb.* 332; 1 *Cranch* 310; 4 *McCord* 294; 1 *Hill* 16; *Rice Ch.* 300; 3 *S. C.* 266; *McMull. Eq.* 27; 2 *Rich. Eq.* 95, and cases cited; 9 *Johns.* 337. II. That even if it were a case for explanation, it has not been explained. 7 *Paige* 163; 1 *Barb.* 210; 4 *Cal.* 289; 9 *Id.* 271; 1 *Atk.* 13; 2 *Id.* 600; 2 *Bailey* 128, 205; *Bail. Eq.* 187, 228; 1 *Strobh. Eq.* 393; 2 *Mill Const. R.* 125; 1 *Strobh.* 372; 60 *Me.* 165; 17 *Mass.* 117; 19 *Pick.* 9; 6 *Allen* 413.

*Mr. J. R. Bellinger*, on same side.

*Messrs. George Westmoreland* and *C. H. Orr*, contra.

November 23d, 1883.    The opinion of the court was delivered by

MR. JUSTICE MCIVER. The object of this action was to set aside a sale of a stock of goods, wares and merchandise made by the defendant Good to his co-defendant Cox, upon the ground of fraud. The circumstances relied upon by the plaintiffs, as badges of fraud, were: 1st. That Good was insolvent at the time of the sale, which was made soon after suits had been commenced against him, and embraced all of his property except that which was covered by a prior lien.    2d. That Good remained in possession of the property alleged to have been sold, and to all appearances continued business as before.

The master found, as matters of fact, that the insolvency of Good was not known to Cox at the time of the sale; that he paid full value for the goods sold; that the object of the sale was to provide for the payment of a debt upon which Cox was surety; that Cox had no intent to perpetrate a fraud in becoming the purchaser, and only bought to protect himself from liability as surety; that after the sale he employed Good as his agent to carry on the business, and that the result of the whole transaction was a loss to Cox of something over four hundred dollars. The Circuit judge concurred with the referee in these findings of

fact, and this is conclusive upon us, for it is manifest that there was testimony, which, if believed, would be sufficient to establish each and every one of these facts.

It is, however, earnestly contended on the part of the appellants, that these badges of fraud are conclusive evidence of the fraud charged, and are incapable of being explained or rebutted by evidence. It is not to be denied that there are authorities which seem to support this proposition, and very possibly if the question were *res integra* it might be regarded as the safer and better rule. But we think that the more recent cases, not only in England and in the Supreme Court of the United States, but also in this State, show that such a proposition cannot now be sustained; and that the true rule is that while these badges of fraud constitute such strong evidence that they will be regarded as conclusive, unless explained by the most satisfactory testimony, yet they do not constitute such a presumption of fraud as to be irrebuttable by any evidence. In other words, when these badges of fraud are established, and nothing more, the presumption of fraud then becomes conclusive, and no inquiry into the intention of the parties is necessary or admissible. But when satisfactory evidence is offered to explain them, it then becomes a question of fact, to be determined by that branch of the court invested with jurisdiction to determine issues of fact, whether under all the circumstances the transaction brought in question is *bona fide* or fraudulent.

The case of *Edwards* v. *Harben*, 2 *T. R.* 587, may be regarded as the leading case in support of the proposition contended for by the appellants, but it is at least open to question whether the language used in that case is not susceptible of a construction more favorable to the rule which we have stated to be the correct rule, than to the proposition contended for by appellants. The language used by Buller, J., in that case is as follows: "This has been argued by the defendants' counsel as being a case in which the want of possession is only evidence of fraud, and that it was not such a circumstance *per se* as makes the transaction fraudulent in point of law; that is the point which we have considered, and we are all of opinion that if there be nothing but the absolute conveyance without the possession, that in point of law is

fraudulent." When it is considered that there was no evidence in the case tending to explain the continued possession of the vendor, the language above quoted may well be construed as meaning that the retention of possession by the vendor, where such continued possession is not satisfactorily explained, is not merely evidence from which a jury may find fraud, but that it is conclusive.

As has been well said by the learned annotator in his notes to *Twyne's Case*, 3 *Rep.* 8, at page 10 of 1 *Sm. Lead. Cas.*: " The words of Buller, J., were, ' if there be nothing but an absolute conveyance, without the possession, that in point of law is fraudulent,' by which his lordship may have intended that where there was nothing, *i. e.*, no facts whatever appearing in the case except the absolute conveyance and the non-delivery, that then the inference of fraud would be so strong that a jury ought not to resist it. But it is very different in cases where, although the conveyance is absolute and the possession has not passed, still there are surrounding circumstances which show that a fraud may not have been intended ; in such cases it cannot properly be said that there is nothing but an absolute conveyance without the possession." At all events it appears from the case of *Martindale* v. *Booth*, 3 *Barn. & Ad.* 498, and other cases cited in the same note, that the tendency of the latter cases in England is to hold that retention of possession by the vendor is not absolutely conclusive, but only *prima facie* evidence of fraud, which may be rebutted by testimony satisfactorily explaining such possession.

The case which is usually cited from the Supreme Court of the United States, in support of appellants' proposition, is *Hamilton* v. *Russell*, 1 *Cranch* 310. That case rests entirely upon the authority of *Edwards* v. *Harben*, *supra*, and is open to the same explanation, inasmuch as it does not appear that any evidence was offered tending to explain the continued possession of the vendor ; and in the absence of such explanation the retention of possession would properly be considered conclusive evidence of fraud. But in addition to this, the authority of *Hamilton* v. *Russell*, as sustaining the proposition contended for, is certainly shaken, if not overthrown, by the subsequent case of *Warner* v. *Norton*, 20 *How.* 448, in which it was held that retention of

possession by the vendor of personal property is only *prima facie*, and not conclusive evidence of fraud, and may, therefore, be explained. The court, in speaking of the question now under consideration, uses this language : " Few questions in the law have given rise to a greater conflict of authority than the one now under consideration. But for many years past the tendency has been, in England and in the United States, to consider the question of fraud as a fact for the jury under the instructions of the court, and the weight of authority seems to be now, in this country, favorable to this position. Where possession of goods does not accompany the deed, it is *prima facie* fraudulent, but open to the circumstances of the transaction which may prove an innocent purpose."

The first case in our own State upon the subject, which we have been able to find, is *DeBardeleben* v. *Beekman*, 1 *Desaus.* 346, where it was held that if possession does not accompany the bill of sale, and the same be not recorded, it shall be void as to creditors, though there was no doubt that the parties intended no actual fraud. But in this case it seems to have been conceded that the vendor was allowed to retain possession for his own use and benefit, which, as will be seen from the discussion in the subsequent cases, is the very reason why retention of possession by the vendor is regarded as so strong a badge of fraud. This case, therefore, which seems to have escaped notice in the subsequent decisions, lends no support to the proposition contended for by the appellants.

In *Kennedy* v. *Ross*, 2 *Mill Const. R.* 125, it was held that retention of possession by the vendor was sufficient proof of fraud ; but in that case there was no testimony offered tending to explain the continued possession of the vendor, and there is nothing in the case which warrants the conclusion that the court meant to decide that such possession was so absolutely conclusive of fraud as to be incapable of being explained by other testimony. The case of *Kid* v. *Mitchell*, 1 *Nott & McC.* 334, can scarcely be said to have decided anything upon the point we are considering, though the case seems to imply that retention of possession by the vendor is not absolutely conclusive, but only *prima facie* evidence of fraud. In *Terry* v. *Belcher*, 1 *Bail.*

568, the question was distinctly made and it was held that retention of possession by the vendor, after an absolute sale, is not conclusive, but only *prima facie* evidence that the sale was fraudulent.

In *Smith* v. *Henry*, 2 *Bail.* 118, the court held that the most usual badges of fraud are retention of possession by the vendor, and the sale of the whole or the most valuable part of the debtor's property pending suits against him, and that when these two badges of fraud are found together they become conclusive and render the sale fraudulent *per se* unless explained by the most satisfactory evidence of the absence of any fraudulent intent. It is quite true that when this case came before the Court of Appeals a second time, (1 *Hill* 16,) Harper, J., in delivering the opinion of the court, did use language going very far towards sustaining the view that the retention of possession by the vendor, after an absolute sale, was absolutely conclusive of fraud, and not capable of being rebutted or explained by evidence; but that such was not the intention of the court is conclusively shown by the subsequent case of *Jones & Briggs* v. *Blake and wife*, 2 *Hill Ch.* 629, in which the opinion of the court was delivered by the same distinguished judge, holding that the retention of possession by the vendor may be explained by satisfactory evidence that the possession was retained under a *bona fide* agreement for hire, or that the possession of the vendor was in any other way consistent with a *bona fide* sale, and was not allowed for the purpose of securing to the vendor some "advantage in relation to property, profit or pecuniary advantage."

In *Anderson* v. *Fuller*, *McMull. Eq.* 27, there was no satisfactory evidence explaining the continued possession of the vendor, and hence the presumption of fraud arose. In *Fulmore* v. *Burrows*, 2 *Rich. Eq.* 95, the decision turned upon the fact that the evidence was not sufficient to satisfy the chancellor that there was any *bona fide* agreement for hire, and, therefore, the retention of possession by the vendor not being satisfactorily explained, was sufficient to establish fraud. In *Pringle* v. *Rhame*, 10 *Rich.* 72, it was held that the retention of possession by the vendor after an absolute sale may be explained by satisfactory

evidence that the possession was retained under a *bona fide* agree-ment for hire. In that case, Withers, J., in delivering the opinion of the court, undertakes to show that the case of *Smith* v. *Henry*, as reported in 1 *Hill* 16, when properly understood, does not support the idea that retention of possession by the vendor is so absolutely conclusive of fraud as to be incapable of explanation by evidence.

Applying the rule deduced from the foregoing authorities to the case in hand, we see no reason for interfering with the judg-ment below. The Circuit judge held, and correctly held, that, in the absence of a bankrupt law, an insolvent debtor has the right to prefer one *bona fide* creditor to another, and, therefore, the sale to Cox, although made pending suits against the debtor, being made for the purpose of paying a *bona fide* debt upon which the vendee was surety, constituted no sufficient evidence of fraud.

As to the retention of possession by Good, the Circuit judge held that it was sufficiently explained by the fact which he regarded as satisfactorily proved, that such possession was held merely as the agent of Cox, and not for the benefit of Good. If, as we have seen, the retention of possession by the vendor is susceptible of explanation by satisfactory evidence that the parties had assumed towards each other the relation of bailor and bailee for hire, we cannot see any reason why the fact that the parties have assumed the relation of principal and agent should not have a like effect. Indeed, after the agency has been satisfactorily proved, which, according to the findings both of the master and the Circuit judge, was done in this case, it may be doubted, under the cases of *Brooks* v. *Penn*, 2 *Strobh. Eq.* 113, and *Lott* v. *DeGraffenried*, 10 *Rich. Eq.* 346, whether it is proper to say that the vendor retained possession in this case, or whether it would not be more correct to say that the vendee, by his agent, took possession immediately upon the execution of the bill of sale.

After Cox became the owner of the goods he, of course, had a right to do with them as he pleased; and what more natural than that he, who had no experience in handling a stock of goods, should entrust them to the management of his son-in-law,

who had been engaged in that kind of business. For such management he, of course, had a right to allow him whatever compensation he thought proper, and no one else had a right to complain. It is true that the amount allowed seemed to be greatly out of proportion to the services required of the agent, but while this was a circumstance to be weighed, and doubtless was given its due weight by the Circuit judge, in considering the question as to the *bona fides* of the transaction, yet it was not conclusive; and the Circuit judge, having found that there was no fraud in the sale, we cannot say that there was any such error, as, under the well settled rules of this court, would warrant us in interfering with his conclusion.

The judgment of this court is that the judgment of the Circuit Court be affirmed.