Mr. Justice Montgomery
delivered the opinion of the Court:
This is a suit in replevin in which plaintiff recovered below, and defendant appealed. We have before us a bill of exceptions, and a case stated. The evidence tended to show that in June, 1886, Emanuel Justh, plaintiff’s father, *530 a “married man and householder, and living with his wife,” was the owner of the stock, and engaged in trade in a rented store at 807 Fourteenth street N. W., this city. The stock, consisting of “optical” goods, was worth about $700, while the father was indebted about $1,340, and had no other available property. Among his creditors were Levy, Dreyfus & Co., who held his unmatured notes for $341, and Annie M. Buckley, to whom he owed $700 for money borrowed.
At that date (June 19, 1886), the father sold to plaintiff the entire stock in consideration that he should pay Miss Buckley the $700, her due, and the son then and there gave his notes for the amount, and took from his father a bill of sale of the goods, and immediately caused it to bo recorded. The son, the plaintiff, at once took charge of the goods, rented the store in his own name, changed the sign over the door from the “ Vienna Optical Company” to the “Washington Optical Company,” and thereafter “such articles as were added to the stock (from time to time) were purchased in his name,” and all “receipts were given in his name.”
That on the day of the sale plaintiff placed “ his father in the store as manager, at a salary of $50 per month, which was paid out of the receipts of the store, and out of his (the son’s) pocket when the receipts were insufficient.”
During all this time the son was engaged in business in another part of the city, and “ only went to the Fourteenth street store occasionally.”
Matters so continued until January, 1887, when Levy, Dreyfus & Co. brought suit on their notes. In February they took judgment by default and at once sued out execution, and with full knowledge of the alleged sale of the. goods to the son placed it in the hands of the defendant, who -was then the marshal of the District, and he seized the goods, after setting apart to the father $200 worth of the stock, which would have been exempt from levy if the sale had not been attempted; whereupon plaintiff replevied the goods so seized.
*531 When the testimony closed, the defendant asked the court to instruct the jury as follows:
“ 1. The jury is instructed that if they believe from the evidence that the plaintiff left his vendor in possession of the goods in question the sale is. absolutely void against the creditors of his vendor.
“ 2. The jury is instructed that the bill of sale offered in evidence is void against his creditors for want of the vendor’s wife joining as a party grantor thereto.
“3. The jury is instructed that the sale in question is void against his creditors because the vendor was indebted beyond his assets at the -time of sale and rendered himself insolvent by this sale.
“4. The jury is instructed that demand before suit is necessary in order to maintain this replevin.”
All of which prayers were refused and exceptions duly noted.
Other prayers were presented and refused, but the points raised are not pressed here.
The doctrine of the first prayer is that the placing or leaving of the father in charge and management of the store and stock rendered the transaction — the sale — pet' se, void.
We do not so understand the law. The plaintiff’s testimony fairly tended to show a transfer of the manual possession of the goods to the plaintiff.
But had the evidence failed to show that the plaintiff ever took actual possession, that fact would not necessarily have rendered the transaction per se fraudulent and void. At most it was but prima fade evidence of fraud open to explanation, and a question of fact for the jury. Bump on Fraudulent Conveyances, 65, 68, 74, 76; Warner vs. Norton, 20 How., 460; 1 Parsons on Contracts, 441, 442; Benjamin on Sales, 485, 486.
The second prayer involved the validity of the bill of sale. It is claimed to be void because not signed by Mrs. *532 Emanuel Justh. As matter of course, if there was an absolute bona fide sale, an actual delivery, and the purchase price folly paid, the bill of sale was wholly unnecessary.
But it is not impossible that its existence to some extent may have influenced the verdict, and therefore defendant has a right to a consideration of his point regarding it.
(1) This 'question is not made by a subsequent purchaser of this property who had no knowledge of the alleged sale, but in behalf of an execution creditor, who had actual notice of the facts; and,
(2) The $200 worth of goods to which Emanuel Justh would have been entitled had lie kept the stock are not involved in this controversy.
But if we admit, which we do not, that this question is open to this defendant in this suit, we have no doubt that the omission of his wife to sign the bill of sale could not affect its validity so far as the goods involved here are concerned. The statute, R. S. D. C., 798, refers only to “exempted articles;” for instance, where a husband alone executes a conveyance of or mortgage upon the exempted homestead, together with other lands not exempt, such mortgage or conveyance, while void as to the homestead, is perfectly good to the extent of the husband’s interest in the excess. Hart vs. Hanle, 19 Wis., 472; Wallace vs. Harris, 32 Mich., 398 ; Ayres vs. Probasco, 14 Kansas, 152. And even if this instrument was impotent to convey title to the exempted articles, it did not need the wife’s signature as to the residue.
And now in regard to the third prayer. It is undoubtedly corrept that a purchase from a debtor in failing circumstances, with a secret reservation to himself as part of the consideration of the right to possess the property for a limited term for his own benefit, is void as to creditors. Bump on Fraudulent Conveyances, 216; Lane vs. Stockwell, 55 N. H., 561; Linkins vs. Aird, 6 Wall., 78; Goodrich vs. Downes, 6 Hill, 438.
*533 But there is no proof in this case, which tends ot support such a theory. It is unquestioned that the son paid, or became obligated to pay, the full value of the goods. The father had the right to pay or provide for the one creditor to the exclusion of the others, if he really did so honestly, and bona fide, and this prayer was therefore properly refused.
The fourth prayer raises the question of the necessity of •a demand of the goods by plaintiff before suit.
If the plaintiff’s contention was supported by the facts, then the defendant disobeyed the command of his writ and ■seized, not the goods of the judgment debtor, but those of the plaintiff. On the assumption that the goods belonged to plaintiff, therefore, the seizure and subsequent possession by defendant were unlawful. No plaintiff in replevin was •ever allowed to be defeated because he failed to demand possession of his goods, then unlawfully detained by the defendant. No demand was necessary in this case. '
This question was settled by this court in Williams vs. Luckett, 18 D. C., 275.
The praj’ers were properly refused, and nothing remains to cousider but the case as stated.
The facts as they were claimed on the part of the plaintiff fully entitled him to a recovery. The evidence offered •on behalf of the defendant can hardly be said to tend to dispute plaintiff’s theory, but if it did, the utmost that can be said is, that there was a question of fact which seems to have been fairly submitted to the jury, and the verdict appears to be in accord with the plain preponderance of the testimony.

There is no error in the record, and the judgment is affirmed.