JOHN ZACHARIE AND WIFE, PLAINTIFFS IN ERROR v. HENRY
FRANKLIN AND WIFE.

Under the laws of Louisiana, and the decisions of the courts of that state, a mark
for the name, to an instrument, by a person who is unable to write his name, is
of the same effect as a signature of the name.

A bill of sale of slaves and furniture, reciting that the full consideration for the
property transferred, had been received, and which does not contain any stipula-
tions or obligations of the party to whom it is given, is not a cynalagmatic con-
tract, under the laws of Louisiana; and the law does not require that such a bill
of sale shall have been made in as many originals as there were parties having a
direct interest in it, or that it should have been signed by the vendee.

Evidence will be legal, as rebutting testimony; as to repel an imputation or charge
of fraud; wh.:h would not be admissible as original evidence.

IN error to the district court of the United States, for East
Louisiana.

The defendants in error, Henry Franklin and wife, on the 23d of
January, 1836, presented a petition to the district court of the United
States, for the eastern district of Louisiana, for the recovery of cer-
tain slaves, with their children, and also of certain stock and house-
hold furniture; which the petition alleged had been sold to him by
Joseph Milah, by a bill of sale, duly recorded in the proper notarial
office.    The bill of sale was in the following words:

*State of Louisiana, Parish of St. Helena.*
Know all men, to whom these presents may come, that I, Joseph
Milah, have this day bargained, sold, and delivered unto Henry
Franklin, his heirs, executors, administrators, and assigns, six negroes,
namely: One negro woman, named Neemy; one boy, do. John;
one do. Sam; one do. Nels; one negro girl, named Harriet; one do.
Jenny; together with all of my cattle, hogs, horses, household and
kitchen furniture, for the sum of twenty-eight hundred dollars, to
me in hand paid; which property I do warrant and defend from me,
my heirs, executors, and assigns, to him, his heirs, executors, admi-
nistrators, and assigns, forever.

[Zacharie et al. v. Franklin et al.]

In witness whereof, I have hereunto set my hand and seal, this 17th day of July, 1819.

                                           his
       (Signed)            JOSEPH ⋈ MILAH,
                                          mark.

Test:
    WM. M'MICHAEL,
    JOEL OTT, [L. S.]

The condition of the above bill of sale is such, that the above mentioned property remain in my possession so long as I live; and, after my body is consigned to the grave, to remain, as abovementioned, in the above bill of sale.

                                           his
       (Signed)            JOSEPH ⋈ MILAH,
                                          mark.

Test:
    WM. M'MICHAEL,
    JOEL OTT.

                    ( *Endorsed.* )

I certify the within to be truly recorded in register, in page 55, according to the law and usage of this state. In faith whereof, I grant these presents under my signature, and the impress of my seal of office, at St. Helena, this 23d day of July, 1819.

       (Signed)            JAMES M'KIE, [SEAL.]

Joseph Milah died in July, 1834; and the petition claimed that the plaintiffs were entitled to the negroes, with their children, and the other property mentioned in the bill of sale; which, at the time of bringing the suit, were in the possession of the defendants; who held and detained them, and have refused to deliver them to the petitioners.

On the fifth day of February, 1836, John and Letitia Zacharie answered the petition, admitting they were in the possession of the negroes mentioned in the petition; and they aver that Letitia Zacharie is in such possession, in her capacity of tutrix of her minor children; who are the lawful proprietors of them by inheritance, from their father, Joseph Milah. They deny that the bill of sale was ever signed by Joseph Milah; and, if signed by him, it was done in error,

[Zacharie et al. v. Franklin et al.]

and through false and fraudulent representations of the plaintiff, and no consideration was given for the same; and the same was fictitious and collusive, and intended to cover or conceal a disguised donation of the slaves mentioned in the same; and was therefore null and void. The defendants asked for a trial by a jury. Afterwards, by a supplemental answer, the defendants say, that, at the time of the alleged sale, under private signature, Joseph Milah had neither children or descendants actually living; and, since the same, the children of which Letitia Zacharie is the tutrix, have been born, and are now living.

On the trial, there was given in evidence by the plaintiffs, among other documents, an instrument executed in South Carolina, Richland district, by Joseph Milah, on the 11th day of July, 1805; by which Joseph *Milah*, under his hand and seal, gave a negro wench and a negro boy, and also his personal property, to Sarah M'Guire. This deed was regularly acknowledged; and was recorded in the Richland district, in South Carolina, on the 10th December, 1805.

The cause was tried by a jury, and a verdict was rendered for the plaintiffs; on which the Court gave a judgment. The defendant took two bills of exceptions.

The first bill of exceptions was in the following terms:

On the trial of this cause, the plaintiff offered in evidence an instrument in writing to his petition annexed, and bearing date the 17th July, 1819, and purporting to be executed by Joseph Milah by the affixing of his mark; and offered to prove same by the evidence of William M'Michael and Joseph Ott, whose signatures are affixed as subscribing witnesses, which instrument is made part of this bill of exceptions: the defendants objected to the introduction of said instrument and testimony on the ground, 1st, that being an instrument purporting to convey slaves, the same was null and void as not having been signed by the vendor; and that no parol proof could be admitted to prove its execution.  2. That a mark is not a signature within the provision of the laws of Louisiana, in relation to the conveyance of slaves.  3. That the instrument, containing a synalagmatic contract or mutual and reciprocal obligation, not being in the form of an authentic act, was invalid, because not made in as many originals as there were parties having a direct interest.  4. That the same was not signed by the vendee.  But the court overruled the objections.

The second bill of exceptions was taken to the admission in evi-

[Zacharie et al. v. Franklin et al.]

dence of the instrument executed in Richland district, South Carolina, as a gift or donation of two slaves and certain personal property.

1. Because the plaintiffs in their petition claim to have a title to the slaves referred to in their petition by virtue of a bill of sale to Henry Franklin, one of the plaintiffs, under date of the 17th July, 1819; and that they cannot offer evidence to establish title from any other source than that therein stated.

2. Because there is no evidence of the identity of the person by whom this instrument purports to have been executed, with James Milah, under whom plaintiffs claim; nor of the slaves named in the petition.

The defendants also moved for a new trial, on reasons filed; which motion was overruled by the Court.

The defendants prosecuted this writ of error.

The case was submitted to the Court by Mr. Benton and Mr. Preston, on printed arguments. Mr. Benton read the arguments for the plaintiffs in error; and for the defendants.

The argument for the plaintiffs in error, was as follows:

The court, in overruling the motion for a new trial, sums up the evidence; and shows clearly the nature of the case, as established by the facts.

The judge states that it was proved on the trial, that the writing sued upon was executed when Joseph Milah was supposed to be on his deathbed. Then it was made mortis causa, and was intended to be a will, or to have the same effect. It contains the disposal of his negroes and furniture. The subscribing witnesses do not prove any money paid; and we know the man was not trafficking in negroes and furniture, for money, on his deathbed. He was making a donation, mortis causa; and, as the judge correctly concludes, was disposing of his half of the community of acquests that had existed between him and his deceased wife, in favour of her sister; as he might do by the laws of Louisiana, having no children. But by the laws of Louisiana then in force, as well as by the present code, "no disposition, causa mortis, could be made otherwise than by last will; all other form is abrogated;" Civil Code of 1808, p. 226, ch. 6, sec. 1, art. 81: and being a nuncupative testament, under private signature, should have been attested by five witnesses residing in the parish, and accompanied by many formalities, all detailed at page

228 of the code; which are not pretended as to the act of 1819, sued on. All these formalities were essential to its validity, as well as that it should have been probated and ordered to execution. Same Code, p. 242, arts. 153, 157. The effect of a will, by the verdict and judgment, is given to the instrument; and yet it was utterly null and void as a will.

But, as a will, it transferred only one-fifth, (though the judge thought one-half, from not adverting to the laws of inheritance,) of Milah's half of the property to the legatee, donee or vendee, by whatever name she is called. The other four-fifths belonged to Joseph Milah's two children, and forced heirs; of which he could not deprive them by will. Civil Code of 1808, page 212, articles 19 and 22. And yet, strange to think, the judge justifies the jury in giving the other four-fifths, or half, as he supposes, to the plaintiffs, on the ground of damages, in which he concurs; although there is no claim for damages in the petition; and although, if proved, (though he states it was merely argued,) it would not support a verdict and judgment for title. The ground on which he supports the verdict for the other half of the slaves, is, that not the plaintiff and vendee in the title sued upon, but his wife inherited that from her deceased sister. The existence of all these facts, which were offered in support of the verdict, were inconsistent with it, and with the action; and clearly showed that the verdict was contrary to law.

This evidence, and these considerations, were undoubtedly offered in lieu of a consideration for the bill of sale, that is, in place of the two thousand eight hundred dollars; but if so, then the sale was simulated, and not real, as plead; but a disguised donation or testament, and therefore null, not being made according to law.

The judge farther states, that it appeared that the act was made to avoid the expense of settling Milah's estate in the court of probates. This was not the consideration expressed; but an illegal consideration; and one that ceased as soon as Milah recovered. For these reasons the act was null; Civil Code, article 1887; and remained a recorded nullity; and peculiarly so, after the subsequent birth of Milah's children. Old Code, page 224, article 74. Until now, fraudulently revived after his death, when orphans are left to contest that which, from shame, would not have been presented had he been alive.

But the judge charged the jury, and the counsel of the plaintiffs now argued for the same thing, that, regarding the instrument sued

on as a donation, although, by the Old Civil Code, page 224, article 74, the law in force at the time, it was revoked by the subsequent birth of children; yet a subsequent law, article 1556 of the New Code, made the donation revocable only; and the last law is to govern the case. Then, in a donation upon condition, the legislature can dissolve the condition without the consent of the donor. It is only necessary to state the proposition to have it rejected; and to induce this high tribunal to instruct the inferior tribunal, to instruct the jury more properly. But the article 1556 of the New Code, revokes the donation up to the disposable portion; which, in the present case, there being two legitimate children contending for their inheritance, is one-half of the estate. New Code, 1480. The donation is not revocable, but revoked to that extent.

These reasons of the judge, the parol testimony adverted to, the written testimony on file, the pleadings, exceptions, and grounds for a new trial; all show conclusively, that the private act of 17th July, 1819, was not a real transfer of slaves for two thousand eight hundred dollars, in hand paid; and, therefore, the verdict declaring it so, was contrary to law and evidence: and the new trial should have been granted by the inferior court, and must be granted by this Court. Indeed, the whole proceeding shows such confusion in the minds of the court and jury, as to what they were trying; that substantial justice requires that the case should be remanded for another trial. They revived an old donation and will, that were dead letters; converted the act of sale sued on, into a will, though against the very letter of our law; and yet administered the laws of inheritance, and act of testament upon Milah's succession; and, in doing so, made a medley of the laws of Louisiana and South Carolina: and still could not deprive the children of the last fourth of their paternal inheritance, without taking an account in equity of the rents and profits of the slaves, and enforcing it by trespass on the case for damages.

The admission of the act sued upon in evidence was opposed; and being admitted, exception was taken thereto. It is liable to three legal objections:

1. It was not recorded in the office of the parish judge of St. Helena, where it was made, and where the parties lived. The law of Louisiana, in force at the time, declared "That no notarial act concerning immoveable property, (and slaves were immoveable property,) shall have any effect against third persons, until the same shall have been recorded in the office of the parish judge, where such im-

[Zacharie et al. v. Franklin et al.]

moveable property is situated." See 3d Martin's Digest of the Laws of Louisiana, page 140.    Mrs. Milah and her children are, as to this transaction, third persons as to Milah; because she married him, believing him the owner of the slaves in his possession, and there was no recorded outstanding title.

2. The contract was synalagmatic.    Milah was bound to keep the slaves, that they might be delivered at his death; and Franklin to grant the enjoyment to Milah during life, and even to pay the price, if it had not in reality been paid.    Yet it was not made in two originals, which the law, in force at the time, positively required, on pain of nullity; it being a writing under private signature.  Old Code of Louisiana.

3. The mark of Milah is made to the instrument, and not his signature.    This objection rests upon our peculiar law, which declares "That all sales of immoveable property, or slaves, shall be made by authentic act, or under private signature."  A verbal sale of any of these things shall be null, as well for third persons, as for the contracting parties themselves; and the testimonial proof of it shall not be admitted.  Civil Code, article 2415.  And in defining acts under private signature, our code declares; that it is not necessary that those acts be written by the contracting parties, provided they be signed by them.  Article 2238. : It is thought, under uniform decisions in France, upon a similar article, that the words signature, and signed, do not embrace a mark; and this interpretation is the more reasonable, as it is so easy to have the contracts of persons who cannot sign, made before a notary; and it is so important with regard to the immoveable property, and the slaves of a country.

Exception was also taken to the introduction in evidence, by the plaintiffs, of a title to part of the slaves, and from which the others descended, dated in Richland district, state of South Carolina, on the 11th day of July, 1805. ᾽ The objection is based upon the universal rule, that the evidence in a cause must correspond with the allegations.    1st Starkie on Evidence, 386; 8 Martin's Rep. 400; 3 Martin's New Series, 509.    The plaintiffs set up no such title in their petition.    It is true, the judge states he admitted it only as rebutting testimony to the parol evidence as to fraud; especially as evidence had been given of a previous disposition of the property.  The idea of the judge is not very clear; but it is very clear that a title has been admitted in evidence, against which the defendants had no opportunity to prepare to defend themselves; and that much more than a re-

butting effect was given to it, since, in the charge to the jury, and in overruling the motion for a new trial; as appears by the judge's reasons, it was constantly stated, that although a donation of slaves is not absolutely, but only contingently, translative of property in Louisiana; yet, by the laws of South Carolina, he had an absolute right to donate the whole of his slaves.

For all which reasons, the plaintiffs in error pray that the judgment may be reversed, and the cause remanded to be tried again.

For the defendants in error, in the printed argument of Mr. Preston, it was said:

The plaintiffs below, Franklin and wife, sue to recover from the defendants below, but who are plaintiffs in error, certain slaves, with their increase, in a bill of sale mentioned in, and annexed to their petition. The defendants, Zacharie and wife, disclaim title in themselves, but set it up for the children of the wife, as heirs of one Milah. They answer that they do not know if Milah, their ancestor, ever made the bill of sale; and, if he did, that it was simulated, and intended to cover a disguised donation; and that this donation became null and void, by the subsequent birth of the children of Milah.

The first question presented by the bill of exceptions of the defendants, is, as to the admissibility of the bill of sale of the slaves from Milah, in evidence. The execution of it by Milah, by affixing his mark thereto, he not being able to write, was proved by the subscribing witnesses; and the court admitted it to go to the jury.

The denial of the execution of the bill of sale of the slaves, by Milah, must be considered as waived, by the subsequent and inconsistent plea, that it became null and void, by the birth of children. See Arnold v. Bureau, 7 Martin's Reports, 291; Nagel v. Mignot, 8 Martin's Reports, 493–4. But if, notwithstanding the inconsistency of the pleas, it was necessary to prove the execution of the bill of sale, it has been sufficiently done by proving, by the subscribing witnesses, that Milah affixed his mark thereto. For a *sous seing prive* act of sale, with the mark of the vendor, is sufficient. It is not requisite that he should sign his name, to make it valid. This question, which has been raised in Louisiana by quotations from French writers, has received a judicial decision, since the trial of this case, from the supreme court of the state of Louisiana. Tagiasco et al. v. Molinari's heirs, 9 Louisiana Reports, p. 512. "The force and effect to be given to instruments, which have for signatures only

[Zacharie et al. v. Franklin et al.]

the ordinary marks of the parties to them, depend more upon rules of evidence, than the dicta of law, relating to the validity of contracts required to be made in writing."

"The genuineness of instruments under private signature, depends on proof; and, in all cases, when they are established by legal evidence, instruments signed by the ordinary mark of a person incapable of writing his name, ought to be held as written evidence."

"The rules of evidence by which courts of justice have been governed in this state, since the change of government, have been borrowed, in a great part, from the English law, as having a more solid foundation in reason and common sense."

"According to the rules of evidence, as adopted in this state, the ordinary mark of a party to a contract, places the evidence of it on a footing with all private instruments in writing." This case has since been confirmed by that of Madison v. Zabriskie, 11 Louisiana Rep. p. 251.

The next question is raised by the exception taken to the charge of the court to the jury. The judge charged the jury that a donation, under the form of an onerous contract, is not void; and in this he is supported by the decisions of the supreme court of Louisiana. Trahan v. M'Manus, 2 La. Rep. 209; Homes et al. v. Patterson, 5 Martin's Rep. 693.

The defendants required the judge to charge, that, by the article 74, page 224, of the old civil code of the territory of Orleans, a donation became absolutely void by the subsequent birth of children; and it was in force and to govern in this case. This he refused, because that code was repealed by the act of the legislature of the state of Louisiana, 12th March, 1828, page 66. And the present code of Louisiana, article 1556, enacted in 1825, revokes donations only up to a certain extent, and under certain circumstances; and this last article, 1556, of the Louisiana code, should apply, because the children were born subsequent to its enactment. There is, then, nothing erroneous in the charge of the judge, nor in the admission of evidence; and the judgment should be affirmed.

The defendants below, present two other points of objection to the legality of the judge's decision, in the court below. First, for admitting the plaintiffs to give, in evidence, a deed of gift for the same property to plaintiff's wife, in the year 1805; and, secondly, for admitting a testamentary bequest of the same property, in favour of plaintiff and wife, in 1834, to be given in evidence: it being argued

that this title by gift, was setting up a different title from the one declared on; and that the will, making the bequest, was not duly executed: but the judge overruled the objections, and admitted the evidence, not as titles, but to rebut the plea of a fraudulent conveyance; and to show that Milah was uniform in his determination, from 1805 to 1834, to pass this property, after his death, to the sister of his first wife, with whom he received this property, and who died childless: that sister and her husband being now the claimants of the property, against the children of a second marriage.

Mr. Justice Barbour delivered the opinion of the Court.

This case is brought into this Court, by a writ of error, to the district court of the United States, for the eastern district of Louisiana.

It was a suit commenced by the defendant in error, for himself and wife, by a petition, according to the Louisiana practice, for the recovery of several slaves, (with their increase,) and other property, consisting of stock of several kinds, and household and kitchen furniture; which he alleged had been sold to him, by a certain Joseph Milah, by a bill of sale, duly recorded in the proper notarial office; of which bill of sale, profert is made in the petition, and which is in the following words, viz: "Know all men, to whom these presents may come, that I, Joseph Milah, have this day bargained, sold and delivered unto Henry Franklin, his heirs, executors, administrators and assigns, six negroes, (naming them;) together with all of my cattle, hogs, horses, household and kitchen furniture, for the sum of twenty-eight hundred dollars, to me in hand paid; which property, I do warrant and defend," &c. Signed Joseph Milah, with his mark. To which was added the following condition, viz: "The condition of the above bill of sale is such, that the abovementioned property remain in my possession so long as I live; and, after my body is consigned to the grave, to remain, as abovementioned, in the above bill of sale." The defendants, Zacharie and wife, filed their answer, denying all the allegations in the petition, except as they thereinafter specially admitted. They then proceed to state, that the female defendant was in possession of the negroes referred to in the petition; that she possessed them in her capacity of tutrix of her minor children, John and Josiah, whom she avers to be the lawful proprietors thereof, by a just title, to wit, by inheritance from their father, Joseph Milah; they denied that the writing attached to

the plaintiff's petition, was ever signed or executed by Milah, and required strict proof thereof; they alleged that, if it ever were so signed and executed, it was done in error, and through the false and fraudulent representations of the plaintiff; and that no consideration was ever given or received therefor: that, if it ever were signed or executed by Milah, it was fictitious and collusive, intended to cover or conceal a disguised donation of the slaves therein mentioned; and that as such, it was null and void, not having been made with the formalities required by law; and they prayed for a trial by jury.

The defendants' afterwards filed a supplemental answer, stating that, at the time when the alleged sale, under private signature, purported to have been executed, Milah had neither children nor descendants actually living; and that legitimate children of said Milah were afterwards born, and were then living.

A verdict and judgment were rendered in favour of the plaintiff.

At the trial, one bill of exceptions was taken by the plaintiff, and two by the defendant. As the judgment was in plaintiff's favour, it is unnecessary to consider the exception taken by him: we therefore pass, at once, to the consideration of those taken by the defendant, now plaintiffs in error.

The first of these was taken to the admission in evidence of the bill of sale, of which profert was made in the petition, upon several grounds which amounted in substance to this; that the instrument, being one which purported to convey slaves, was null and void, because it was not signed by the vendor; a mark not being, as alleged, a signature within the provision of the laws of Louisiana, in relation to slaves; and that no parol proof could be admitted to prove its execution. And that the instrument being one which contained mutual and reciprocal obligations, and not being in the form of an authentic act, was invalid; because not made in as many originals, as there were parties having a direct interest, and not signed by the vendee.

No adjudged case is produced by the counsel for the plaintiffs in error, in support of the first branch of the objection, that the instrument has the mark, and not the signature of Milah. It is rested on a provision of the law of Louisiana, which declares, " that all sales of immoveable property, or slaves, shall be made by authentic act, or private signature."

Signature is indeed required but the question is, what is a signature? If this question were necessarily to be decided by the principles of law, as settled in the courts of England and the United States,

[Zacharie et al. v. Franklin et al.]

there would be no doubt of the truth of the legal proposition, that making a mark is signing, even in the attestation of a last will and testament; which has been fenced around by the law with more than ordinary guards, because they are generally made by parties, when they are sick, and when too they are frequently inopes consilii, and when they therefore need all the protection which the law can afford to them. This principle is fully settled by many cases, amongst others, 8 Vesey, 185, 504; 17 Vesey, 459. See also 5 John. 144.

But the question has been directly adjudicated in Louisiana. In 9 Louisiana Rep. 512, it is said "that the force and effect to be given to instruments, which have for signatures only the ordinary marks of the parties to them, depend more upon the rules of evidence than the dicta of law relating to the validity of contracts required to be made in writing. The genuineness of instruments under private signature, depends on proof; and in all cases where they are established by legal evidence, instruments signed by the ordinary mark of a person incapable of writing his name, ought to be held as written evidence. According to the rules of evidence as adopted in this state, the ordinary mark of a party to a contract, places the evidence of it on a footing with all private instruments in writing." To the same point see the case of Madison v. Zabriskie, 11 Louisiana Rep. 251. This branch then of the objection to the admission of the instrument in evidence, is wholly untenable. Nor is the other branch of the objection to its admissibility better supported; as the first branch fails, as we have seen, for the want of law to support it; so this second branch fails for want of the fact, the assumed existence of which is the only basis on which it rests. That is, it is not in the language of the law, a cynalagmatic contract; or in other words, it does not contain mutual and reciprocal obligations; to which description of contracts only, does the objection at all apply.

All the words in the instrument, as well in its body as in the condition, are the words of the maker of the instrument, the vendor. The vendee does not sign it; he does not speak in it at all. Consequently, there are not, and could not be, any direct stipulations by him, nor can any be implied from its language and provisions; for the paper acknowledges on its face the receipt of the whole purchase money; and nothing whatsoever was to be done by the vendee.

The second exception taken by the defendant was, to the admission in evidence on the part of the plaintiff, of an instrument of writing, bearing date July the 11th, 1805, in the state of South

Carolina; purporting to have been executed by Joseph Milah, as a gift or donation of two slaves, and certain goods and household furniture, to one Sarah M'Guire. The court, however, admitted the evidence, and as we think, properly, for the reason assigned in the bill of exceptions. From that it appears, that previously to the offering this last paper, the court had admitted evidence, on the part of the defendant, to prove fraud and want of consideration; and they then admitted the paper thus objected to as rebutting evidence. Had it been offered, and received by the court, as is objected by the counsel of the defendant in error, as evidence of *title*, it would, under the petition, have been inadmissible; upon the ground of a variance between the allegation and proof. But it was distinctly received, only for the purpose of repelling the parol evidence, which had been given to prove fraud and want of consideration; by showing that Milah had, as early as 1805, manifested a disposition to give the property to the plaintiff's wife, who, as appears from the record, was the sister of the former wife of Milah, who had died without children: the plaintiff's wife is the person named as donee, in the deed before stated, as having been executed by Milah, in South Carolina.

When we speak of the plaintiff in this connection, we mean the plaintiff in the court below; the now defendant in error.

After the verdict was rendered, the defendant in the court below moved for a new trial, for sundry reasons stated on the record, which was refused. The granting or refusing of new trials rests in the sound discretion of the court below; and is not the subject of reversal in this Court. Without making further citations in proof of this proposition, it will be sufficient to refer to 4 Wheat. 220; where it is said by the Court, that the first error assigned is, that the Court refused to grant a new trial: but it has been already decided, and is too plain for argument, that such a refusal affords no ground for a writ of error. The judgment of the court below is vested, and is therefore affirmed, with costs.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the eastern district of Louisiana, and was argued by counsel. On consideration whereof, it is now here adjudged and ordered by this Court, that the judgment of the said district court in this cause be, and the same is hereby affirmed, with costs.