## ASHWELL v. MILLER.

[No. 7,937. Filed October 29, 1913.]

1. PLEADING.—Non Est Factum.—Signature to Pleading.—Presumptions.—"Subscribe."—Under §370 Burns 1908, §364 R. S. 1881, construed with §364 Burns 1908, §358 R. S. 1881, providing that every pleading must be subscribed by the party or his attorney, a pleading under oath denying the execution of a written instrument should be subscribed by the party denying such execution or by his attorney, and, since the word "subscribe" has reference to the place of signature rather than to the manner, ordinarily implying that the name of the party who subscribed is at the bottom or end of the writing or document, and since the act of signing or subscribing is one that may be legally done by

the party or by another authorized to act for him, it follows that there can be no such presumption of the genuineness of defendant's signature to an answer of *non est factum* as to preclude the possibility of forming an issue on that subject. p. 385.

2. WORDS AND PHRASES.—*"Standard."*—The term "standard" presents to the mind the conception of a type or model, or of a combination of elements or conditions accepted as correct and perfect. p. 387.

3. EVIDENCE.—*Comparison of Handwritings.—Standard of Comparison.*—A writing that is in the case only as a standard of comparison in determining the authenticity of handwriting is not of itself primary evidence of the genuineness or spuriousness of such handwriting, but, having been ascertained to be correct, it is a measure for meting out to the jury, through the testimony of experts, primary evidence on the issue involved, and it is never for the jury, but for the court, to determine the genuineness of a writing proposed as a standard. p. 387.

4. EVIDENCE.—*Comparison of Handwritings.—Standard of Comparison.—Admitted Genuineness.*—Writings that are not in evidence and are not papers in the case, may be used for comparison by experts, if their genuineness is admitted by the opposite party, but may not be submitted to the jury in the absence of an agreement to that effect. p. 389.

5. EVIDENCE.—*Comparison of Handwritings.—Standard of Comparison.—Admitted Genuineness.—Papers Already in Evidence.*— In cases involving the authenticity of handwriting, writings admitted to be genuine, and already in evidence for some other purpose, may be submitted to the jury for comparison with the disputed signature, either with or without the aid of experts. p. 389.

6. EVIDENCE.—*Comparison of Handwritings.—Standard of Comparison.—Submission to Experts.—Admission of Genuineness.— Collateral Issues.*—A paper not already in evidence for some other purpose cannot be submitted to experts as a standard of comparison, even if there is no dispute about its authenticity, unless the genuineness of the signature thereto is voluntarily admitted in open court, or on the record, by the party against whom the paper is sought to be used, since without such admission there might be a collateral issue formed as to the genuineness of such proposed standard, and an admission of genuineness by the party offering the paper would operate merely as a self-serving statement. pp. 389, 390.

7. EVIDENCE.—*Comparison of Handwritings.—Standard of Comparison.—Use by Experts.*—Evidence is not admissible to prove the genuineness of a proposed standard of comparison, and although such evidence has in fact been heard, such proposed

standard may not be used either by experts or by the jury for comparison, unless it has been admitted to be genuine. p. 389.

8. EVIDENCE.—*Comparison of Handwritings.—Standard of Comparison.—Estoppel.*—A party may estop himself from denying the genuineness of a writing proposed as a standard of comparison by introducing it in evidence. p. 390.

9. EVIDENCE.—*Comparison of Handwritings.—Standard of Comparison.—Answer of Non est Factum as Standard.*—Defendant's answer of *non est factum* denying the execution of the note sued on cannot be used as a standard of comparison of the genuineness of his signature, in the absence of an admission by plaintiff of the genuineness of defendant's signature thereto, any more than any other extraneous paper, since such pleading may be signed by defendant or by some one at his direction, making it possible to raise a collateral issue as to the genuineness of that signature. pp. 390, 392, 396.

10. EVIDENCE.—*Comparison of Handwritings.—Standard of Comparison.—Admission of Genuineness.—Estoppel.*—An implied admission of the genuineness of a writing offered as a standard of comparison, or an estoppel to deny its genuineness, must of necessity be based on something said, done, or omitted by the party against whom such writing is to be used. p. 391.

11. EVIDENCE.—*Comparison of Handwritings.—Standard of Comparison.—Presumption Against Fraud.*—The fact that fraud is never to be presumed will not preclude plaintiff from questioning the genuineness of defendant's signature to an answer of *non est factum* offered as a standard of comparison. p. 391.

12. EVIDENCE.—*Comparison of Handwritings.—Standard of Comparison.*—The mere fact that a writing, offered as a standard of comparison in determining an issue of *non est factum*, was written after the controversy arose is not sufficient to exclude it for such purpose. p. 395.

From Boone Circuit Court; *James V. Kent,* Special Judge.

Action by Elvira Ashwell against Matthew G. Miller. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*T. J. Terhune* and *S. R. Artman,* for appellant.

*B. F. Ratcliff,* for appellee.

CALDWELL, J.—The appellant filed her complaint against the appellee, declaring on a promissory note, alleged to have been executed by the latter to the former. The appellee filed an answer of *non est factum,* under oath as required by the

statute.   The answer, omitting the caption, is as follows:
"The defendant, Matthew G. Miller, being first duly sworn,
upon his oath, for his answer to the complaint herein, says
that he did not execute the note mentioned in the complaint,
and that said note is not his act and deed.   Matthew G. Mil-
ler.   Subscribed and sworn to before me this 13th day of
November, 1909.   George E. Adams."   The issue formed by
the complaint and said answer was the sole issue, and was
tried by the court without a jury.   The finding and judg-
ment for costs were for appellee.

At the trial, appellee, to maintain his answer, called
Squire Kenworthy and a number of other persons as wit-
nesses, who qualified as experts in handwriting, to each of
whom the court permitted appellee to present his said answer
and note in suit, and by a question, proper in form, to elicit
from each of said witnesses, over the objection of appellant,
an answer in substance that in his opinion, the name "Mat-
thew G. Miller," signed to said answer was not in the same
handwriting and was not written by the same person as said
name signed to said note.   The court also, over appellant's ob-
jection, permitted appellee to introduce said answer in evi-
dence.   Appellant's objection to the use of the signature to
said answer by said experts as a standard of comparsion, and
to its introduction in evidence, was in substance as follows:
That appellant does not admit that the signature to said an-
swer is in appellee's genuine handwriting or that he wrote it
with his own hand; that said signature is not appellee's gen-
uine signature, but is a disguised and simulated signature,
made especially for the purposes of the trial; that appellant
denies that said signature is in appellee's genuine handwrit-
ing; that said signature was written after the commencement
of the action, and is, therefore, a *post litem motam* signature;
that no evidence has been introduced to prove the genuine-
ness of the signature; that such signature is the act of appel-
lee either in person or by agent, and is, therefore, self-serving.
Such a state of the record presents for our consideration the

single question of whether the court erred in thus permitting appellee to use the signature to his own answer of *non est factum* as an exemplar or standard of comparison, under the circumstances of this case.

The only evidence in the record bearing on the genuineness of appellee's signature to said answer, consists in that it appears signed thereto, and that said answer was apparently sworn to and was filed by appellee. Under these facts, Was the signature to said answer sufficiently accredited as genuine that the use of it by appellee as a standard was proper? The answer to this question depends on whether the fact that the pleading showed on its face that appellee's name was signed to it and that appellee filed it, and apparently swore to it, raises such a presumption of the genuineness of the signature as to preclude the forming of an issue on that question. Section 370 Burns 1908, §364 R. S. 1881, provides that "Where a pleading is founded on a written instrument, * * * such instrument * * * may be read in evidence on the trial of the cause without proving its execution, unless its execution be denied by pleading under oath, or by an affidavit filed with the pleading denying its execution." The answer in the case at bar is a pleading under oath rather than an affidavit filed with a pleading. Section 370, *supra,* does not in terms require that an answer of *non est factum* be signed or subscribed by any one. However, §364 Burns 1908, §358 R. S. 1881, provides that "Every pleading in a court of record must be subscribed by the party or his attorney." If these statutes be construed together, it would seem that an answer of *non est factum* should be subscribed by the party or by his attorney. The word "subscribe" as applied to the act of affixing a name to a document or writing has reference to the place of signature rather than to its manner, the primary meaning of the word being "to write underneath." *Loughren* v. *Bonniwell* (1904), 125 Iowa 518, 101 N. W. 287, 106

Am. St. 319. It ordinarily implies that the name of the party who subscribes is set by him or by his authority at the bottom or end of the writing or document. *Stone* v. *Marvel* (1864), 45 N. H. 481; *American Surety Co.* v. *Worcester, etc., Co.* (1900), 100 Fed. 40. Under §3947 Burns 1908, §2919 R. S. 1881, which provides that "Conveyances of lands or of any interest therein, shall be, by deed in writing, subscribed, sealed, and duly acknowledged by the grantor or by his attorney," it is held that where the grantor's name is signed to a deed by some other person at the grantor's request, the signing is a sufficient subscribing, within the meaning of the statute, the court saying: "In our opinion, the signature of the grantor in a deed, written by another at his request, or, though written without his knowledge, if adopted by him as his own, has the same validity as if written by his own hand." *Nye* v. *Lowry* (1882), 82 Ind. 316. See, also, *Bartlett* v. *Drake* (1868), 100 Mass. 174, 97 Am. Dec. 92, 1 Am. Rep. 101; *Clough* v. *Clough* (1882), 73 Me. 487, 40 Am. Rep. 386; *Carver* v. *Carver* (1884), 97 Ind. 497, 514. That the words "signing" and "subscribing" have for all practical purposes the same meaning when applied to the act of affixing a name to a written instrument, and that such a signing or subscribing may legally be done by another for the party to such instrument, if done at his request, and that it may be done with pen and ink, pencil, stamp, stencil, typewriter or type, and that this rule applies to the signing or subscribing of pleadings, see the following: *Harless* v. *Consumers Gas Trust Co.* (1895), 14 Ind. App. 545, 43 N. E. 456; *Ardery* v. *Smith* (1905), 35 Ind. App. 94, 73 N. E. 840; *Fried* v. *Nelson* (1902), 30 Ind. App. 1, 65 N. E. 216; *Crumrine* v. *Estate of Crumrine* (1895), 14 Ind. App. 641, 43 N. E. 322; *Kennedy* v. *Graham* (1893), 9 Ind. App. 624, 35 N. E. 925, 37 N. E. 25; *Turpin* v. *Eagle Creek, etc., Gravel Road Co.* (1874), 48 Ind. 45; *Brems* v. *Sherman* (1902), 158 Ind. 300, 63 N. E. 571; *Lewis* v. *Watson* (1892), 98 Ala. 479, 13 South. 570, 22 L. R. A. 297, and note, 39 Am.

St. 82; *Weston* v. *Meyers* (1864), 33 Ill. 424; *Grieb* v. *Cole* (1886), 60 Mich. 397, 27 N. W. 579, 1 Am. St. 533; *Williams* v. *McDonald* (1881), 58 Cal. 527; *Zacharie* v. *Franklin* (1838), 12 Pet. 161, 9 L. Ed. 1035; *Greenfield Bank* v. *Crafts* (1862), 86 Mass. 447; *Loughren* v. *Bonniwell, supra.* It would seem then that regardless of whether appellee's answer of *non est factum* was signed by him in his own customary handwriting, or in a simulated or disguised hand, or by another for him and by his authority, it was equally valid as an answer, and, therefore, under the circumstances of this case, there could not be such a presumption of the genuineness of appellee's signature to his said answer, as to preclude the possibility of forming an issue on that subject, if it were permissible to form such an issue.

In determining whether the court erred in the matter under consideration, it becomes necessary to have a clear idea of the meaning of the term "standard" as used 2. in this connection. Such term presents to the mind the conception of a type or model, or of a combination of elements or conditions accepted as correct and perfect. In inquiries involving the authenticity of handwriting, a standard of comparison is not of itself primary 3. evidence of the genuineness or spuriousness of such handwriting, but rather it is a measure, which having been ascertained to be correct, is used to mete out primary evidence on the issue involved. Where the cause is tried by a jury, the court, rather than the jury, determines whether a writing proposed as a standard is authenticated or may be used as such, and the right to submit the standard as such to the jury does not exist. The evidence based on the standard goes to the jury through the testimony of experts. It therefore, follows that in the final determination of the cause, the question of the genuineness of the standard is not submitted to the jury. These observations apply to writings which are in the case only as standards. As we shall hereinafter ascertain, other writings admitted to be genuine, and

already in evidence for some other purpose, may be submitted to the jury for comparison with the disputed signature. It also becomes necessary to consider the scope of the principle that permits the use of standards of comparison, where the inquiry is concerning the genuineness of handwriting, and especially the principle applicable where a proposed standard naturally provokes an issue involving its own authenticity. There is very great diversity in the decisions of the courts of the various states regarding the subject under discussion, and it would, therefore, be a useless task to attempt to harmonize the decisions of any particular state with those of all the other states. This conflict among the decisions results in part from the fact that many states have statutes on this subject, while in other states, the common law prevails, modified by local decisions. For a classification of the states upon the subject of the existence or nonexistence of such statutes therein, and the provisions of such statutes, where they do exist, see note to *University of Illinois* v. *Spalding* (1902), 62 L. R. A. 817 and note to *Gambrill* v. *Schooley* (1902), 63 L. R. A. 428. Also, 3 Chamberlayne, Mod. Law of Ev. §2246 *et seq.* The statutes as a rule provide in substance that the genuineness of writings proposed for comparison with the disputed signature or writing, where such genuineness does not otherwise appear, as by admission, may be established by proof. Certain other states allowing comparison with standards proved to be genuine, have developed such a rule as part of their common law. It is apparent that in determining what force or effect should be given to a decision of a court of any particular state, it must first be ascertained whether such decision is based on such a statute, or whether within that state, such a rule has been developed. Appellee cites in his brief a large number of decisions under such special statutes. In this State, at the time of the trial of the case at bar, there was no statute providing for or regulating the use of other writings as standards of comparison, where the genuineness

of a particular writing or signature was involved; nor had we developed a rule allowing the genuineness of a standard to be established by proof. It is possible, however, to formulate, from the decisions of the courts of this State, certain general rules applicable here. Thus, writings not in

4. evidence, and not being papers in the case, may be used for comparison by experts, if their genuineness is admitted by the opposite party, but, except by agreement, such papers may not be submitted to the jury. *Chance* v. *Indianapolis, etc., Gravel Road Co.* (1870), 32 Ind. 472; *Burdick* v. *Hunt* (1873), 43 Ind. 381; *Huston* v. *Schindler* (1874), 46 Ind. 38; *Jones* v. *State* (1877), 60 Ind. 241; *Forgey* v. *First Nat. Bank* (1879), 66 Ind. 123; *Hazard* v. *Vickery* (1881), 78 Ind. 64; *Walker* v. *Steele* (1889), 121 Ind. 436, 22 N. E. 142, 23 N. E. 271; *Bowen* v. *Jones* (1895), 13 Ind. App. 193, 41 N. E. 400; *Merritt* v. *Straw* (1892), 6 Ind. App. 360, 33 N. E. 657; *Campbell* v. *Connor* (1895), 15 Ind. App. 23, 42 N. E. 688, 43 N. E. 453. Where there are other

5. papers already in evidence, admitted to· be genuine, the jury may make the comparison, either with or without the aid of experts. *Burdick* v. *Hunt, supra; Chance* v. *Indianapolis, etc., Gravel Road Co., supra; Huston* v. *Schindler, supra; Swales* v. *Grubbs* (1890), 126 Ind. 106, 25 N. E. 877; *Shorb* v. *Kinzie* (1884), 100 Ind. 429; *Bowen* v. *Jones, supra.* It is held that a paper, not already in

6. evidence for some other purpose, where the signature thereto is not admitted to be genuine, although there is no dispute about its authenticity, cannot be submitted to experts as a standard of comparison, the reason assigned being that if the rule were otherwise, there might be a collateral issue formed as to the genuineness of the proposed standard, before a comparison could be made by the experts. *Huston* v. *Schindler, supra; Burdick* v. *Hunt, supra.*

7. Evidence is not admissible to prove the genuineness of a proposed standard of comparison, but where such evidence has in fact been heard over objection, such proposed

standard, if not admitted to be genuine, may not be used either by experts or by the jury for comparison. *Jones* v. *State, supra; Hazard* v. *Vickery, supra.* The admission of genuineness must be made by the party against whom the paper is sought to be used; otherwise it would be a self-serving statement, rather than an admission. *Shorb* v. *Kinzie* (1881), 80 Ind. 500; *Shorb* v. *Kinzie* (1884), 100 Ind. 429; *Swales* v. *Grubbs, supra.* Such admission must be voluntarily made by the party as such, in open court, or to the record; he cannot be called as a witness, and as such be required to testify on the subject of the genuineness of a writing tendered for comparison. *Hazard* v. *Vickery, supra; Bowen* v. *Jones, supra.* It seems that under some circumstances, a party may estop himself from denying the genuineness of a proposed standard, by introducing it in evidence. *Swales* v. *Grubbs, supra; Hazard* v. *Vickery, supra.* No collateral issue will be permitted. If there is any dispute as to the authenticity of the paper offered for comparison, it must be excluded. *Chance* v. *Indianapolis, etc., Gravel Road Co., supra; Hazard* v. *Vickery, supra.* These general rules tend to the exclusion of collateral issues. True, that what is said in the decisions cited above respecting collateral issues is for the most part said respecting extraneous writings offered for comparison, rather than papers connected with the case, but a collateral issue is just as objectionable when the paper involved is an answer of *non est factum,* as when it is strictly an extraneous paper. The paper as a proposed standard of comparison is excluded because it gives rise to a collateral issue rather than that the collateral issue is not permitted by reason of the nature of the paper that creates it.

In the case at bar, appellee offered and used his own answer of *non est factum* in his own behalf, as a standard of comparison. He prepared it or caused it to be prepared, and either signed it or caused it to be

signed with his name. The record does not disclose in any manner approaching certainty that he informed the court or appellant whether it bore his genuine signature, but had he done so, such a statement from him, under the circumstances of this case, would have been a self-serving statement, rather than an admission. For reasons already given, appellee's act of filing his said answer and offering it as an exemplar, cannot be construed as an implied admission by appellant of the genuineness of the signature to such answer, nor can appellant thereby be estopped from denying the genuineness of such signature. An implied admission or an estoppel, to be such as against appellant, of necessity would have to be based on something said, done or omitted by appellant rather than by appellee.

It is argued by appellee in effect that to raise any question as to the genuineness of his signature to his said answer would be to presume fraud against appellee in the signing and filing of his answer, and authorities are cited that fraud is never presumed, but must be proven. That fraud is not presumed is sound as a principle of law, but appellee had a legal right, under some, and perhaps under all, circumstances to sign his answer in his own hand or by the hand of another, and having so signed it, to file it. Fraud cannot be presumed from the proper exercise of a legal right. But if it should be taken as true that to question the genuineness of appellee's said signature, in a case where he had filed said answer bearing said signature, and where he tendered such signature as a standard of comparison, would be presuming fraud as against him, still it cannot be assumed that appellee would confess such fraud, if it in fact existed, and as the principle of nonpresumption of fraud does not prevent the opposite party from asserting it, a collateral issue respecting the genuineness of the tendered standard would arise, and this is contrary to the policy of our law.

In *Hazard* v. *Vickery, supra,* the defendant Vickery's dep-

osition had been taken in the case. At the trial, plaintiff, preparatory to using them as standards of compari-
9. son, sought to show by defendant as a witness, that his signature to his answer of *non est factum* and also to said deposition, was genuine, but it was held that the trial court properly refused to permit him to do so, the reason assigned being that otherwise a collateral issue would arise, such signatures not being admitted to be genuine. In *Shorb* v. *Kinzie* (1884), 100 Ind. 429, appellee, as plaintiff, filed a verified reply of *non est factum* to an answer pleading a written and signed receipt against the claim sued on. It was held error to permit plaintiff's attorney in argument, over the objection of defendant, to present said reply and said receipt to the jury for comparison, with the statement that the signature to the former was genuine, but that plaintiff had not signed the latter. The point decided is that it was error to allow the jury to have the first inspection of said signature at the time of the argument, and to use it for the purpose of comparison at such time and under such circumstances. However, the court said: "If such a signature as the one now in question can be assumed in any instance to be the genuine handwriting of the party whose signature it purports to be, and upon such assumption alone can be submitted to the jury as a standard of comparison, we think that a party cannot be permitted, in denying in pleading the execution of an instrument, to make a specimen of handwriting to be used by himself on the trial of the cause as a standard by which the jury shall test the genuineness of the handwriting in dispute. To hold otherwise would be to invite imposition through a class of evidence which, at best and when most carefully guarded, is not very reliable."
In *Thomas* v. *State* (1885), 103 Ind. 419, 2 N. E. 808, defendant placed his own affidavit for a change of venue in the hands of an expert for comparison with certain letters alleged to have been written by defendant, the genuineness of which he denied. No objection was made, and the correct-

ness of the procedure was not decided. In *Tucker* v. *Hyatt* (1895), 144 Ind. 635, 41 N. E. 1047, 43 N. E. 872, appellee brought suit against appellant for breach of marriage contract. Appellant pleaded, in answer, a written release of the marriage contract, claiming that such release had been signed by appellee. Appellee replied *non est factum* to the answer. At the trial, appellee offered in evidence her own affidavit for a change of venue, purporting to bear her signature, and also her said reply, whereupon appellant objected for the reason that "the papers are before the jury for all purposes anyway." Appellee, with the understanding that these papers were before the jury for all purposes, withdrew the offer. While the trial was in progress, the court permitted counsel for appellee, over the objection of appellant, to submit said verified reply and said release to the jury, and permitted the jury to compare the signatures thereto. In holding that no error was thereby committed, it is said: "These papers were a part of the record, and were before the court and jury for all proper purposes. It was not necessary to introduce them in evidence; they were already in for that purpose, and might therefore be commented on by counsel and inspected by the jury." In the foregoing matter, *Tucker* v. *Hyatt, supra,* would seem to be in conflict with *Shorb* v. *Kinzie* (1884), 100 Ind. 429, were it not that in the former, appellee's verified reply had been conceded by appellee "to be before the jury for all purposes anyway." Further, in *Tucker* v. *Hyatt, supra,* appellee, over the objection of appellant, was permitted to place in the hands of an expert her verified reply and affidavit for a change of venue, and the said written release pleaded by appellant, and said expert was permitted to testify that in his opinion, the release was not signed in the same handwriting as said reply and affidavit. It was held that no available error was thereby committed, the decision being based on two grounds: (1) that the objection was not sufficient to present the question of whether the signature used

for comparison may have been written in a disguised hand, and the evidence be, therefore, in effect self-serving; (2) that the record showed that the paper used in comparison had been offered in evidence, and the offer withdrawn under circumstances above set out. *Tucker* v. *Hyatt, supra,* is easily distinguished from the case at bar, in that in the case at bar, appellant stated specifically in his objection and as part of the grounds of objection, that appellee's signature to his said answer was not in his genuine handwriting, and that it was a disguised and simulated signature, made by appellee or his agent for the purpose of the trial, as hereinbefore in this opinion set out. *Tucker* v. *Hyatt, supra,* is further distinguished from the case at bar in that in the former the court apparently construed as an admission of genuineness appellant's said statement that ''the papers are before the jury for all purposes anyway.''

*Springer* v. *Hall* (1884), 83 Mo. 693, 53 Am. Rep. 598, was a suit on a promissory note. Answer *non est factum.* The trial court permitted defendant over plaintiff's objection, to show by an expert that in his opinion the signature to the note was not in the same handwriting as the signature to the answer, and also, over plaintiff's objection, to exhibit the two signatures to the jury. The Supreme Court, on appeal, held that the trial court erred in each of these rulings, the court saying: ''It seems that the authorities will not sustain this position. It is said the temptation to manufacture evidence is too great. 'The knowledge must not have been acquired or communicated with a view to the specific occasion on which the proof is offered.' 1 Best, Evidence §236. In *Stranger* v. *Searle* (1793), 1 Esp. 14, Lord Kenyon rejected the evidence of a witness who stated that he had seen the defendant write his name several times before the trial, who wrote it to show the witness his true manner of writing, so that witness might be able to distinguish it from his alleged signature on the acceptance. The reason given was that defendant might have disguised his writing.'' The decision

in *Springer* v. *Hall, supra,* is indorsed as sound by Judge Gillett. See Gillett, Indirect and Collat. Ev. §220. *Travers* v. *Snyder* (1890), 38 Ill. App. 379 and *Doud* v. *Reid* (1893), 53 Mo. App. 553 are in harmony with *Springer* v. *Hall, supra;* while *Elsenrath* v. *Kallmeyer* (1895), 61 Mo. App. 430, cited by appellee, is not in conflict with it, since in that case the signature to the claim file which was the basis of the action was "undisputed and indisputable" as stated in the opinion, and moreover it was offered and used as a standard of comparison by the opposite party, rather than by the party whose signature it bore. *Singer Mfg. Co.* v. *McFarland* (1880), 53 Iowa 540, 5 N. W. 739, cited and argued by appellee is not in point here. In that case, appellant, as plaintiff, proved the genuineness of defendant's signature written on a piece of paper, and then used it as a standard, whereupon appellee, as defendant, was permitted to prove his own signature to an answer of *non est factum* to be genuine and to use it as a standard. The case was decided under a statute that provided that "evidence respecting handwriting may be given by comparison made by experts or by the jury, with the writings of the same person which are proved to be genuine."

Appellee cites and discusses in his brief a large number of other cases, claimed by him to sustain the rulings of the trial court. Except as specifically noted in this opinion, these cases were either decided under special statutes authorizing evidence to be heard to establish the genuineness of a proposed standard of comparison, or they present situations where papers filed in the case were used by the opposite party as standards of comparison. Appellant cites a number of decisions by courts other than of this State, in support of the proposition that said signature should have been excluded as a standard of comparison, for the reason that it was a *post litem motam* writing. Such fact alone was not sufficient to exclude its use. Although a writing made after the controversy arose, it could

have been properly used, had its genuineness been admitted. Appellant did not admit its genuineness, but on the contrary, denied that it was genuine, and thus the tendering of such signature for use as a standard of comparison gave rise to a collateral issue, which the court neither did, nor was authorized to try.

In permitting appellee to use said signature to said answer of *non est factum* as a standard of comparison, over appellant's objection, the court erred, for which error

9. the judgment below must be reversed. The judgment is reversed with costs, and the cause remanded, with instructions to sustain appellant's motion for a new trial, and it appearing that appellee has died since the submitting of the cause, judgment is reversed as of the term when the submission was made.

Note.—Reported in 103 N. E. 37. See, also, under (1) 31 Cyc. 525; (2) 36 Cyc. 815; (3) 17 Cyc. 164, 177; (5) 17 Cyc. 165; (7) 17 Cyc. 180. As to comparison of handwriting, see 6 Am. Dec. 171; 62 L. R. A. 817. As to competency of handwriting as standard for comparison, see 63 L. R. A. 427. As to papers in record as standards for the comparison of handwriting, see 9 Ann. Cas. 451.